Hemming v. Zimmerschitte.

[159] HEMMING V. ZIMMERSCHITTE.

A writing purporting to be an answer, but not signed by either the defendant or his attorney, cannot properly be classed among the pleadings in the cause.

In an alternative contract, where the obligor has, until the day of performance, the option of which of two things he will perform, the right of election is lost if he suffer the period to elapse without performance of either; and so, by analogy, the right would be gone if no particular period were fixed, and performance were delayed until demanded by the obligee.

A bond conditioned to be void upon the conveyance of land cannot be discharged at the pleasure of the obligor by the payment of the penalty or damages, but entitles the obligee to demand a conveyance of the land at all events. This is the usual form assumed in this country by contracts for the sale of lands; and in their construction the penalty has been regarded as intended to secure the principal intent and object of the transaction, viz, the conveyance of the land, and to reimburse such damages as the obligee may suffer where performance is impossible, &c. (Note 32.)

It will be seen by reference to the statute of limitations that in no one of its provisions does it include an action for the specific performance of agreements for the transfer of property. The rules prescribing such actions must be sought elsewhere. They are to be deduced from decisions where the extent to which the rights of parties to equitable relief have been affected by their laches has been the subject of adjudication. (Note 33.)

The vendor and vendee under an executory contract for the sale of land occupy mutually and respectively towards each other the relation of trustee and *cestui que trust* so long as they do not indicate by their acts an intention to refuse compliance with the obligations imposed by the contract. (Note 34.)

Where the vendee has performed all his obligations, the vendor's subsequent possession or interest in the land is held in trust and in subordination to the superior equitable right of the vendee; and this possession continues to maintain its fiduciary character until the vendor manifests an intention to refuse performance or to claim and enjoy the land as his own; and until that be done in some mode, the laws of limitation or the rules on the subject of laches do not commence their operations so as to exclude the vendee from his relief in equity. (Note 35.)

*Quere?* As to the rule of limitation where the vendee is fully clothed with the equitable title, and the vendor indicates his intention to refuse performance or to claim the property as his own.

Error from Colorado. This suit was brought by the plaintiff in error against the defendant in error "to enforce the specific performance of a title bond for two hundred and fifty acres of land." [160] The date of the bond was the 28th of August, 1839. The petition was filed on the 16th of September, 1846. By the bond the defendant acknowledged himself to be held and firmly bound unto the plaintiff in the sum of $4,000, with a condition in the following words:

"Now the condition of the foregoing obligation is such that if I, the said Zimmerschitte, my heirs or assigns, for and in consideration of seven hundred and fifty dollars to me in hand paid, the receipt whereof is hereby by me acknowledged, shall make or cause to be made to the said John Hemming, his heirs or assigns, a good and valid title to the following-described tract of land containing two hundred and fifty acres, then the above obligation to be void and of no effect; otherwise to remain in full force and virtue." Then follows a description of the land.

The record contained a copy of a writing (filed April 3, 1847) purporting to be an answer, and setting up the statute of limitations as a defense; but it was not signed either by the defendant or his counsel. On the 17th of October, 1848, defendant filed a general demurrer. On the 14th of April, 1849, defendant obtained leave to amend his answer. On the 17th of April, 1849, plaintiff amended by making the bond a part of his petition, and same day defendant filed another general demurrer. On the 15th of October, 1849, plaintiff excepted to defendant's answer. On the 19th of October, 1849, the court sustained the defendant's demurrer and dismissed the suit. The plaintiff moved the court to set aside the order sustaining the demurrer and dismissing the suit. Overruled.

Hemming v. Zimmerschitte.

The errors assigned were—

1st. That defendant was permitted to file a general demurrer subsequent to an answer to the merits.

2d. The overruling of plaintiff's exceptions to the answer.

3d. The sustaining of the demurrer of defendant.

*Pease*, for plaintiff in error. It is to be regretted that our practice of allowing general demurrers does not present [161] to the appellate court the grounds on which the court below decided; and we are compelled to conjecture in such cases what they were. In this case it is impossible to ascertain, from an inspection of the record, for what cause the demurrer was sustained. The suit was brought to compel the specific performance of the bond of the defendant to make a title for two hundred and fifty acres of land. That the court had jurisdiction to make such a decree is well settled. On this subject see 2 Story's Eq., secs. 715, 751. The bond is well set out and sufficiently described in the petition; for it makes a part of it and is attached to it. The petition and amendments contain sufficient allegations on which to have rendered a decree if they were true; and for the purposes of the demurrer they must be taken as true.

The truth is that the demurrer was sustained on the ground that the plaintiff's cause of action was barred by the laws of limitation, although this is not shown by the record. Our statute of limitations prescribes no time within which a suit for specific performance shall be commenced. The undertaking of the defendant in his bond was to make a title to the land described; and no time being named within which he should make this title, it was his duty to have executed the title and tendered it to the plaintiff. The only cause of action the plaintiff had under the bond was a suit for the specific performance until the defendant had refused to make the title or put it out of his power to do so. When this bond was executed, the defendant became the trustee for the plaintiff and held the land for his use. (2 Story Eq., sec. 1212.) No limitation could run in favor of defendant until by some act he indicated that he intended to hold the land adversely to plaintiff; such as a refusal to make the title, a sale, or some other disposition which showed an intention to appropriate it adversely to plaintiff. The plaintiff could not have maintained an action for damages unless he could show that the plaintiff had refused to make a title or placed it out of his power to do so; for it was the right and privilege of defendant to discharge himself [162] from his obligation by making the title. If the petition showed that defendant had refused to make the title or placed it out of his power to do so four years previous to the commencement of this suit, then it is possible the statute of limitations might avail. In such a case it might well be contended that as the plaintiff's right to an action for damages was barred, the court could not decree a specific performance. In this case it does not appear that there was any refusal to comply with the bond until this suit was brought, and no action for damages accrued until that time. The court would not have permitted the defendant to discharge himself from this obligation by paying the penalty; so that it cannot be considered as a money claim, to be barred in four years. (2 Story Eq., sec. 715.) The penalty in the bond must be considered as a mere security for the performance of the agreement, (2 Story Eq., 715,) for the recovery of which no action accrued until there was a refusal to comply with the bond.

*Rivers*, for the defendant in error.

I. I deny that any suit for the conveyance of the land can be sustained. A contract is an agreement to do or not to do something, either express or implied. An express contract can only bind the parties by their expressions. It is perceivable from the phraseology of this contract that the parties intended the option for the benefit of the obligor. If, then, he makes his election by failing to convey the land, the bond becomes single, and a suit for the money only can be sustained. (1 Johns. R., 59; 1 Bailey R., 136; 1 Johns. Cas., 81;

### Hemming v. Zimmerschitte.

1 Verm. R., 612.) Suppose the obligor had given his bond on one piece of paper, and the obligee had given the condition or the defeasance on another : would it for a moment be believed that the obligee could sustain an action for the specific performance of his own promise? To whom (at common law) would this contract have descended on the death of the obligee after breach? It is clear that a suit at law could be sustained for the money. The administrator would prefer to consider it a money demand, while the heir, [163] on the contrary, (if this suit can be sustained.) would elect to take the land. The doctrine I contend for does not militate against that laid down by Story under the head of " penalty." There the contract is to convey land under a penalty. Here a bond is given for money, which may be discharged, at the option of the obligor, by the conveyance of land. (1 Verm. R., 612.)

II. If a suit at law had been brought on this bond, as it well might, at the time this suit was brought, the claim would have been barred by the statute of limitations. Will, then, the plaintiff, by resorting to a bill in equity for specific performance, avoid the operation of the statute on the ground that the vendor was trustee for the vendee? If so, we have the anomaly of a suit in equity untouched by the hand of time, while a suit at law on the same instrument is stale. Yet statutes of limitation are as obligatory on the chancellor as on the judge.

III. The petition nowhere alleges that the plaintiff had demanded a deed. (4 Phillips, note to p. 86 ; 7 Wend. R., 129 ; 2 Edw. Ch. R., 78.)

HEMPHILL, CH. J. This case was brought by the appellant (who was plaintiff in the court below) for specific performance of a bond conditioned to be void on conveyance of title to lands therein described. The petition was filed in September, 1846, and the answer, or paper purporting to be an answer, in April, 1847. At the next term a general demurrer or exception was filed, and at a subsequent term the petition was amended and a second general demurrer was pleaded. On argument the demurrer was sustained and the petition dismissed. A motion to set aside this judgment was overruled, and the cause has been brought up to this court by error. It is assigned for error—

1. That defendant was permitted to file a general demurrer subsequent to an answer putting in issue the facts of the case.

[164] 2. That the plaintiff's exceptions to the answer were overruled.

3. That the demurrer was sustained.

The consideration of the first and second assignments of error may be waived, as the record does not show that an answer to the facts was pleaded. There is in the transcript a copy of a writing purporting to be an answer ; but it is not authenticated by the signature of either the defendant or his attorney, and cannot properly be classed among the pleadings in the cause.

We will proceed, without further observation, to the important point in the case, viz, whether there was an error in the judgment sustaining the demurrer and dismissing the petition.

In support of this judgment it is contended that the instrument sued upon contains no such covenants as would maintain an action for a specific conveyance of the lands which form the subject-matter of the contract ; that the obligor had the option either to convey the land or pay the penalty, and having made his election by failure to convey, the bond becomes single, and a suit for the money alone can be maintained.

Were this to be regarded as one of those alternative contracts in which the obligor has, until the day of performance, the option of which of the two things he will perform, yet this right is lost if he suffer the period to elapse without making the election ; and so, by analogy, the right would be gone if no particular period was fixed, and performance was delayed until demanded by the obligee in the contract. (1 Bailey R., 136 ; Story on Contracts, sec. 8, 976.) There does not appear on the record, as presented, a manifestation of willingness on the part of the obligor to discharge his obligation ; and the right of election, if applicable at all, is lost and cannot avail the defendant.

## Hemming v. Zimmerschitte.

But in equity an agreement such as the one under consideration is not treated as one which can be discharged at the pleasure of the obligor by the payment of the penalty or [**165**] damages, but as authorizing a demand for the conveyance of the land at all events. This is the usual form assumed in this country by executory contracts for the sale of lands; and in their construction the penalty has been regarded as intended to secure the principal intent and object of the transaction, viz, the conveyance of the land, and to reimburse such damages as the vendee may suffer where performance is impossible or may not be sought by the obligee.    Mr. Justice Story, in his Commentaries on Equity Jurisprudence, has stated the principle, as deduced from the authorities, in the following terms, viz : "The jurisdiction of courts of equity to decree a specific performance is not dependent upon or affected by the form or character of the instrument.    What these courts seek to be satisfied of is that the transaction, in substance, amounts to and is intended to be a binding agreement for a specific object, whatever may be the form or character of the instrument.    Thus, if a bond with a penalty is made upon condition to convey certain lands upon the payment of a certain price, it will be deemed in equity an agreement to convey the land at all events, and not to be discharged by the payment of a penalty, although it has assumed the form of a condition only.    Courts of Equity, in all cases of this sort, look to the substance of the transaction; and where that requires a specific performance, they will treat the penalty as a mere security for its due performance and attainment."    (2 Story Eq., sec. 715 ; Foubl. Eq., ch. III, sec. 9 ; Sng. V., 154 ; 2 Atk. R., 371 ; and the cases referred to by Mr. Justice Story.)

The petition is not insufficient, then, on the ground that the only remedy of the obligee was a suit for damages, and that the covenants are not such as to authorize action against the obligors for their specific execution.

It is suggested in the argument of the appellant that the demurrer was sustained on the ground that the action was barred by the statute of limitations. The ground may probably have been that the demand was stale, and was not, therefore, [**166**] a proper subject for the interposition of a court of equity.

It will be seen by reference to the statute of limitations that in no one of its provisions does it include an action for the specific performance of agreements for the transfer of property.    The rules prescribing such actions must be sought elsewhere.    They are to be deduced from decisions where the extent to which the rights of parties to equitable relief have been affected by their *laches* has been the subject of adjudication.    It appears to be a general rule that parties seeking specific execution of agreements should file their petitions promptly, and not slumber on their rights.    (Madd. Ch. Prac., 414.)    In the cases generally where the effect of *laches* has been the subject of discussion, the contract had not been fully executed by either party ; and the one against whom relief was sought had indicated, by his acts or expressions, his intention to disavow or abandon the contract.    In Watson v. Reid, (1 Russ. & Myl., 236,) the plaintiff having notice that the defendant had abandoned the contract, and not filing his bill for nearly a year afterwards, the delay was held to be unreasonable, and the bill was dismissed.    (4 Peters, 311 ; 2 Story's Eq., sec. 771.)

But in the case under review the vendee had, at the inception of the contract, completely discharged all his obligations by the payment of the purchase-money.    He was from that time fully clothed with the equitable title, and had a perfect right at any time to have demanded the conveyance of the interest remaining in the vendor.    There was no delay in the discharge of the duties growing out of his relation to the vendor as arising under the contract. There is no pretense that the plaintiff, on his own allegations, which are all we can now consider, shows that the bargain was hard, unconscionable, or iniquitous ; and the only *laches* of which the plaintiff has been guilty is in not promptly demanding a conveyance to which he was indisputably entitled. This is a delay which could operate no injury to the defendant, as all the duties devolving [**167**] upon the plaintiff had been previously fully discharged.

## Hemming v. Zimmerschitte.

That the most just rights may be lost by negligence in their prosecution is well settled; but the character of the delay in this case (if there be any in legal contemplation) is not such as would defeat the relief sought by the petitioner.

It is an acknowledged principle that vendor and vendee under an executory contract for the sale of lands occupy mutually and respectively the relation of trustee towards each other (Sugden, 160) so long as they do not indicate by their acts an intention to refuse compliance with the obligations imposed by their contract. In this case, the vendee having performed his obligations, the vendor's subsequent possession or interest in the land was held in trust and in subordination to the superior equitable right of the vendee; and this possession would continue to maintain its fiduciary character until the vendor would manifest an intention to claim and enjoy the land as his own. The possession would then become adverse; and so far as shown, it did not assume that aspect until the demand and refusal averred as constituting the breach on which the suit was instituted. There is no indication by sale of the land to a third person, or by any other mode, that the vendor claimed an exclusive interest in the lands, or that he had repudiated or denied the binding force of the contract. And until that was done in some mode the laws of limitation or the rules on the subject of *laches* would not commence their operation, so as to exclude a party who was in no default from his relief in equity. The possession of the vendor would continue to be that of the vendee; and though the trust may not be performed, (which in this case was the execution of a conveyance,) yet the possession of the vendor would not operate as a bar, because it was in accordance with his title. (7 Johns. Ch. R., 121.)

This is the rule on the subject of trusts; though I can perceive no good reason why the character of the one existing in this case should defeat the operation of the statute of limitations or the analogous rules by which equitable demands [**168**] are barred. On the facts presented it is manifest that the vendee could, at any time after the date of the contract, have instituted his action for specific performance. The fact of his being fully entitled to relief was well known to the petitioner, as he had paid the money; and this is the only ground on which the relief he seeks could be obtained. Now, where a party has a right in equity and labors under no disability to prosecute his suit, I see no sufficient reason why his demand should not be barred by limitations applicable to analogous cases at law. The relation of landlord and tenant, or of an actual trustee and *cestui que trust*, is different in some respects from that existing between vendor and vendee. The possession in the former cases is intended to be consistent with the superior right, and has some beneficial object and purpose to be accomplished by its continued existence in that character; but what salutary object can be promoted by permitting the relation between the vendor and vendee to continue as a trust, when the purpose of the transaction between them was to create no such trust, but to transfer property from the one to the other, and when the only ground for continuing the trust is to await the execution of a conveyance, to which there is no legal obstruction, and what would long since have been decreed, had application been made to the courts of the country? The policy of statutes of limitation includes among its objects that of preventing deception on the community by permitting credit to be obtained on the faith of large property which might nevertheless be absorbed in the extinction of stale demands; and this policy would be counteracted, to some extent at least, by suffering vendors to remain in possession of property to which they have but a shadow of title, while the substance remains in another. Even where notice is had of the transaction, yet the delay of the vendee might lead to the supposition that the contract was rescinded, or that no real transfer had even been intended. When money is loaned to or deposited with another, there is a trust; but this will not prevent the statute from [**169**] barring an action for its recovery; and when the

84 ·

purchase-money is paid, and a conveyance is only wanting to perfect the title, there would be no more hardship in a rule which would require the party, in a limited period, to pursue his rights in this case than in the former, where money was sought to be recovered.

It may be said that the vendor has it in his power to extinguish the trust by making the conveyance. So has a debtor the power of extinguishing the demand by paying the debt; but should he fail to do so, he cannot, after a limited period, be coerced. Circumstances may exist which would require a continuance of the trust relation after the conditions have been fully performed by one of the parties. The vendor, for instance, though fully paid, may not have it in his power to make immediately a valid legal title. There is good reason, under such circumstances, for considering the relation between the parties as a continuing trust; but where the vendor could be constrained to execute the conveyance, and no other duty of the relation remains to be discharged, I see no reason why an action for that purpose should not be subject to the rules of prescription applicable to the case. But the rule is otherwise, and the petitioner is entitled to its benefits. The limitation on his right of action did not commence its operation until the vendor had indicated an intention to refuse performance or to claim the property as his own. (7 Johns. Ch. Rep., 90; Cheves R., 22, 33; 2 Rich. Eq. R., 133; 20 Johns R., 33; 19 Verm. R., 526; 6 B. Mon. R., 479, and 1 Rice Eq. R., 373.) What would, under that state of circumstances, be the proper rule of limitation where the vendee is fully clothed with the equitable title can be determined when the question is presented for consideration. The facts upon which this opinion is given are those averred in the petition, as they are alone examinable on demurrer. On considering of these, we are of opinion that the judgment is erroneous; and it is ordered that the same be reversed and the case remanded.

Judgment reversed.

Note 32.—Williams v. Talbot, 16 T., 3; Gregory v. Hughes, 20 T., 345; Bullion v. Campbell, 27 T., 653.
Note 33.—DeWitt v. Miller, 9 T., 239; Mitchell v. Sheppard, 13 T., 484; Stramler v. Coe, 15 T., 211; Holman v. Criswell, 15 T., 394.
Note 34.—DeCordova v. Smith, 9 T., 129; Smith v. Hampton, 13 T., 463; Geary v. Cummins, 28 T., 91.
Note 35.—Holman v. Criswell, 15 T., 394; Vardeman v. Lawson, 17 T., 11; Early v. Sterrett, 18 T., 113; Gibson v. Fifer, 21 T., 260.