### E. M. TILLMAN v. HARRY BROWN.

(Case No. 5330.)

1. VERDICT — HOMESTEAD — ISSUE.— On a special issue submitted as to a party's place of business, as also the character of the occupation he was there pursuing, the verdict was: "We, the jury, find for the defendant, that his place of residence was at Wichita Falls." *Held,* that the verdict did not respond to the issue submitted.

2. HOMESTEAD — GAMING.— The constitution accords protection to the place where the head of a family exercises his calling, but it does not extend its protection to a place in which the occupation followed is prohibited by the penal laws of the state, such as gaming. Though the party claiming homestead exemption did engage in gaming on the premises, still, if his real business conducted there was legitimate, he would be protected; he would not be so protected, however, if the legitimate business was conducted only as a blind to conceal the gaming.

APPEAL from Wichita. Tried below before the Hon. B. F. Williams.

The statement of the commission of appeals is adopted, and is as follows:

Appellant was a wholesale merchant, residing and doing business in the city of Dallas, Texas. Appellee was, at the institution of this cause, a saloon-keeper and gambler, and for several years prior thereto resided in and carried on his business in the city of Weatherford, Parker county, Texas; and while so residing and carrying on his business at Weatherford, he purchased of appellant articles of merchandise, and on the 31st day of August, 1882, accepted drafts drawn on him by appellant, covering the balance due on the merchandise, maturing on November and December of the year 1882, and one maturing on the 15th day of January, 1883, aggregating the sum of $1,000. During the month of September, 1883, appellee moved to Wichita Falls, purchased a lot, and built thereon a house in which to exercise his calling as a saloon-keeper and gamester. He continued to carry on his business in that town until the 12th day of March, 1883, when he grew tired of the business of keeping a saloon, and sold out all of his stock and fixtures, save five thousand cigars, and rented the saloon privileges of the building to one Johnson, he paying appellee therefor the sum of $330 cash in hand, and executing his two promissory notes for the sum of $330 each, due respectively in thirty and sixty days. Appellee still retained the privilege of running a restaurant in the building, and also retained the gambling rooms.

Appellant sent his attorney to call upon appellee, who found the vendor, appellee, and his vendee, Johnson, in the apparent joint possession of the property appellee alleged that he had sold. Some conversation was had by the attorney and appellee with respect to the payment of the debt, etc., and on the 14th day of April, 1883, Haney sued out a writ of attachment, and the same was levied on the property of the appellee, the property that Johnson alleged that he had bought of appellee, and on the house and lot in which they were doing business, as appears from the sheriff's return on the writ. The case came on for trial at the August term of the district court, 1884. Appellee had pleaded in abatement of the writ of attachment, asking that the same be abated so far as the levy on the real estate was concerned, saying that he was the head of a family, etc., and that he exercised his calling as the head of a family on the premises. He further answered by a plea in reconvention, alleging that the suing out of the writ of attachment was both wrongfully and maliciously done, and set his damages at $1,889 for the wrongful suing out of the attachment, and at $6,000 for the malicious

suing out of the writ.   Appellant answered by a supplemental peti-
tion, in which he pleaded both  general and  special exceptions, plea
of not guilty, and facts showing the joint possession of the property
in the hands of  the appellee and  his vendee, Johnson.   Appellant's
general and special exceptions were overruled by the court, save ex-
ception 8, to which appellant excepted.   The case proceeded to trial
before a  jury, which, after the  evidence and  charge of the court,
returned the following verdict:

"We, the  jury, find for the defendant,  Harry  Brown, that his
place of  residence was in Wichita Falls.   We, the  jury, find for the
defendant, Harry Brown, in the sum of $1,303.95, being the amount
of his actual damages  less amount  claimed in  plaintiff's petition.
We, the jury, find for the defendant, Harry Brown, the sum of $500
vindictive damages.                                       J. W. Arlege,
                                                        " Foreman."

Upon that verdict the court rendered judgment against appellant
for $689.95, and  refused to  decree a foreclosure of  the attachment
lien on the house and lot, but by implication held the same to be ex-
empt from forced sale.

A *remittitur* was entered for the $500 exemplary damages.


*Wray & Stanley*, for appellant, cited:  Revised Civil Statutes, art.
1333;  Neal *v.* Birdseye, 39  Tex., 604;  Kesler *v.* Zimmerschitte, 1
Tex., 50;  Kerr *v.* Hutchins, 46  Tex., 389;  Phillips *v.* Hill, 3  Tex.,
398.


No briefs on file for appellee.


Watts, J. Com. App.— One of the  contested issues in the  case
was as to whether or not the house and  lot  upon which the attach-
ment had  been levied was at that time exempt from forced sale, by
reason of its being the place where appellee exercised his calling or
business as the head of  a family.

Appellee asserted this claim of  exemption, and  averred that not-
withstanding he had  sold to Johnson his stock  of liquors, bar fixt-
ures, etc., he  still retained a portion of  the building and continued
his business of  restaurant keeper therein.

Appellant replied that in  fact the only  business conducted by ap-
pellee at the time of  the seizure in  the  house was that of  gaming.
That he then kept a gaming establishment in the rear  room of  the
building, and  that the lunch stand was  the  merest pretext, and

simply kept for the purpose of protecting the property from forced sale for the payment of his debts.

This issue was submitted to the jury upon the evidence adduced by the parties. The verdict was: "We, the jury, find for the defendant, Harry Brown, that his place of residence was at Wichita Falls."

Now it should be observed that there was no issue before the jury as to the place of appellee's residence, but the issue was as to his place of business, and the character of the occupation he was then pursuing.

Obviously the verdict did not respond to the issue submitted. Nevertheless the court in effect adjudged the property exempt from the operation of the writ of attachment.

Appellant was undoubtedly entitled to a finding upon the issue made and submitted to the jury.

While the constitution accords protection to the place where the head of the family exercises his calling or business as such, it will not extend protection to a place in which the occupation followed is prohibited by the penal laws of the state.

Gaming as defined by the code is prohibited. So, also, the keeping and exhibiting any gaming table or bank, for the purpose of gaming, is denounced as a misdemeanor and punished accordingly. And any person who permits any game prohibited by law, to be played in his house, or a house under his control, is guilty of a misdemeanor and punishable by fine.

Now if, as claimed by appellant, Brown was engaged in keeping and exhibiting gaming tables and banks for the purpose of gaming, in the house, and that was the real business or occupation in which he was engaged, then the constitution would not protect the property from forced sale. But, notwithstanding the appellee was engaged in gaming, still, if his real business or calling was that of restaurant keeper, that being a legitimate business, would entitle him to the constitutional protection.

However, if the restaurant or lunch stand was but a pretext, as claimed by appellant, run but as a blind to shield the gaming, or run in connection with and as subsidiary to the gaming, or as part and parcel of its machinery, it would be doing violence to the spirit of the constitution to hold that the place would be protected from forced sale.

Our conclusion is that the judgment ought to be reversed and the cause remanded.

In view of another trial it should be remarked that the rule for

ascertaining the value of the oil painting claimed to have been wrongfully seized and sold is clearly stated in H. & T. C. R'y Co. v. Burke, 55 Tex., 343.

Other questions presented are so well settled by adjudicated cases that it is not necessary to consider them.

REVERSED AND REMANDED.

[Opinion adopted May 29, 1885.]