## D. R. BEATTY ET AL. v. CHARLES W. BULGER.

Decided February 6, 1902.

**1.—Partnership—Liability—Individual Obligation of Member.**

A partnership is not liable upon an individual obligation of one of its members, such as a promise to indorse a note which is not in furtherance of the purposes of the partnership, or undertaken for its benefit; nor would such promise by one partner and his failure to so indorse the note render the other partner liable.

**2.—Verdict—Uncertainty.**

Where plaintiffs' petition alleged two grounds of liability, on one of which defendants would be liable, if at all, for $1195, and on the other for $375, and the charge instructed the jury that their finding, if in plaintiffs' favor, must be in one or the other of such sums, a verdict for $750 should have been set aside for uncertainty, and as not being responsive to the pleadings and charge.

**3.—Agency—Evidence—Good Faith—Fraud.**

An agent's failure to inform his principal that he was an indorser on a note which the principal agreed to pay and did pay, was a circumstance to be considered in determining the agent's good faith in the transaction, but would not suffice to establish fraud on the agent's part as a matter of law.

**4.—Fraudulent Misrepresentation.**

A misrepresentation may be actionable whether the party making it knows it to be false or not.

Appeal from Galveston.  Tried below before Hon. R. M. Franklin.

*Harris & Harris,* for appellants.

*R. W. Houk,* for appellee.

PLEASANTS, Associate Justice.—This suit was brought by appellee to recover of appellants damages in the sum of $1195.25 alleged to have been suffered by appellee by reason of false and fraudulent representations made to him by appellants.  The cause of action is set out in the petition as follows: On the 8th day of March, 1898, plaintiff was the owner of certain property in the city of Galveston of the value of $5000, upon which there was incumbrance of $3400; that D. C. McKinnon was the owner of a 40-acre tract of land near the town of Dickinson, in Galveston County, on which there was an incumbrance of $950, evidenced by four promissory notes executed by McKinnon; that plaintiff had agreed to trade his Galveston property subject to said incumbrance of $3400 for said 40-acre McKinnon tract free from all incumbrance, it being understood and agreed that said notes for $950 were to be taken up and canceled by said McKinnon. "Plaintiff was then induced by the fraudulent misrepresentations of said Beatty and Davis to modify said agreement and take said 40 acres of the McKinnon tract and pay said incumbrance himself in consideration of said Beatty and Davies and McKinnon agreeing to give said plaintiff in lieu of the payment of the incumbrance the equivalent in value in other notes and securities, which consisted of other notes aggregating $950, and interest as follows: Two notes for $375 each, due three and eight months after date respectively, and one for $200 due twelve months after date, all executed by D. C. McKinnon and dated February 25, 1898, and payable to the order of C. W. Bulger.

"That defendants conspired to defraud plaintiff and did defraud him out of $950 and interest, in this: That said Beatty and Davies, who were copartners, were acting as plaintiff's agents in negotiating and advising and making said trades and in all matters connected therewith, and were well paid for their services by plaintiff, and that it was their duty to use their judgment and discretion in plaintiff's interest and behalf; that the said notes aggregating $950, which were the incumbrance on the 40-acre Dickinson tract, were at the time of the trade owned by said D. R. Beatty, or were indorsed and transferred by said Beatty and he was liable for their payment to the holder thereof; that this fact was not disclosed by the said Beatty and Davies to said Bulger, and that the said Bulger did not know that his said agents were in any way personally interested until about February 1, 1900, long after this

trade was made; and that said Beatty desiring them paid or satisfied, so that he would not be called upon to pay or satisfy them, and being well aware that McKinnon would never pay them, he, the said Beatty, paid his own notes, or canceled his own indebtedness with his principal's money or property, and advised and persuaded and induced his said principal, Bulger, to accept the worthless new notes extended by McKinnon; and that this was fraud upon their principal, the plaintiff herein.

"Plaintiff further says that defendants made fraudulent misrepresentations as to the value of the new notes amounting to $950, executed by said McKinnon to him, Bulger; that they told him that said new notes were perfectly good and could be collected, and that they knew said McKinnon was solvent and that his financial standing was excellent; that he owned property, a house and lot, in Galveston, and a section of land in Brazoria County, Texas; that said defendants well knew the contrary to be true; and that he was insolvent and had no property of any value subject to execution. That plaintiff believed that said Beatty and Davies were representing him and acting solely in his behalf and interest, and relied and acted on their judgment, advice, and good faith in making this trade, and not knowing nor suspecting that said Beatty was handling his own property or canceling his own indebtedness with the property of plaintiff.

"Plaintiff paid off the said notes owned or indorsed by said Beatty as aforesaid and accepted the worthless notes of McKinnon for $950, to wit, the new ones dated February 25, 1898, as aforesaid, which notes are and always have been absolutely worthless owing to the insolvency of said McKinnon, all of which was well known to McKinnon and defendants Davies and Beatty, and that had plaintiff known this he would have investigated and used his own judgment as to the value of the McKinnon notes dated February 25, 1898, accepted by plaintiff on Beatty's advice, and he would never have made the trade or taken up and paid off the said notes owned by Beatty which were the *incumbrances* on the Dickinson tract, and accepted the worthless notes in consideration of such payment. Plaintiff further says that in order to induce plaintiff to accept the worthless notes of McKinnon, he, Beatty, agreed to indorse the first one due for $375, dated February 25, 1898, and pay the amount of said note to plaintiff in case it could not be collected from McKinnon when due, which agreement was to be evidenced by Beatty's indorsement on the note. That said McKinnon is and has at all times been insolvent and has failed and refused to pay any part of his said notes to this plaintiff and the same can not be collected from him, and are worthless and have always been so. That although the said Beatty had the note he agreed to indorse in his possession and led plaintiff to believe he had so indorsed it, said Beatty, with intent to defeat his agreement to guarantee the payment of said note to plaintiff, failed to so indorse it and now fails and refuses to pay the same, although it can not be collected from McKinnon.

"Plaintiff further says that, relying on all of the said misrepresentations of Davies and Beatty and being thereby deceived, he accepted the worthless notes, and in consideration for same paid the said notes owned or indorsed by the said Beatty amounting to $950 and interest from date. That by reason of said frauds practiced by defendants as aforesaid, plaintiff has sustained injuries to the extent of the face value of the worthless notes, to wit, $950 and interest on same at the rate of 8 per cent per annum from February 25, 1898, to date of judgment, and costs of suit, making the total amount of damages sustained by plaintiff $1195.25."

The petition prays for judgment for said sum of $1195.25 and cost of suit and for general relief.

Defendants' answer contains general and special demurrers and general denial, and a special plea in which defendants aver that it was their honest opinion at the time said trade was made by them for plaintiff that said McKinnon was solvent, and that such is their opinion now, and that in making said alleged representation to plaintiff they did nothing more than express their honest opinion as to the solvency of said McKinnon. They further aver that plaintiff was a man of wide knowledge and large business experience, and did not rely upon defendants' expression of opinion as regards the solvency of said McKinnon, but to secure himself against any loss by reason of the failure of McKinnon to pay said notes for $950, retained a vendor's lien upon the Galveston property sold by him to McKinnon.

The cause was tried by a jury in the court below and verdict returned in favor of plaintiff for $750, with interest thereon from March 10, 1898, in accordance with which judgment was rendered.

The evidence in the case is conflicting upon some of the material issues, and in view of the conclusion reached by us as to the disposition of this appeal it is not proper to discuss the conflicts in the evidence or pass upon any of the assignments which raise the question of the sufficiency of the evidence to sustain the verdict.

It was shown by uncontradicted evidence that the defendant Beatty was indorser upon the original McKinnon notes for $950, which were paid by plaintiff, but there is no evidence that the defendant Davies was liable on any of said notes or had any interest direct or indirect in procuring their payment, nor is there any evidence tending to show that he agreed or promised to indorse any of the new notes given plaintiff by McKinnon, or agreed or promised in writing or otherwise as an inducement for the acceptance of said new notes by plaintiff, that any of them would be indorsed by Beatty. Such being the state of the evidence upon this issue, it is manifest that no verdict can be sustained against the appellant Davies by reason of the failure of the appellant Beatty to indorse the first of said notes for $375 as alleged in plaintiff's petition. That a partnership is not liable upon an individual obligation of one of its members not shown to be in furtherance of the purposes of the partnership or undertaken for its benefit is an elementary propo-

sition too plain to require the citation of authorities. Upon this issue the court below charged the jury as follows:

"The measure of damages, if any you find, will be the amount, if any, paid by plaintiff to discharge the incumbrance, if any, on the 40-acre tract; unless you shall have found that plaintiff is not eititled to recover by reason of any representations other than the promise, if any, to indorse the McKinnon note, and in this event the measure of damage, if any, will be the amount of McKinnon's first note."

We think this charge clearly instructed the jury that they might return a verdict against the appellant Davies for $375, if they believed that Beatty had promised to indorse one of McKinnon's notes for that amount and had failed to do so.

Appellants by proper assignment complain of this charge, and we think the assignment should be sustained. The same error occurs in other portions of the charge as set out in appellant's twelfth and fourteenth assignment of error. Appellee contends that the appellants could not have been prejudiced by this instruction, because the jury in finding for plaintiff in the sum of $750 must necessarily have found against the defendants upon other grounds than the failure of Beatty to indorse the first of the new McKinnon notes. We do not think this contention is sound, because the verdict returned by the jury is irresponsive to the pleadings, the evidence in the case, and the charge of the court, and it is impossible to determine upon what ground said verdict was found.

The petition alleges two grounds of liability; upon one ground the defendants if liable at all were liable in the sum of $1195.25, and upon the other ground in the sum of $375. These two grounds of liability were both submitted to the jury by the charge of the court, and under said charge, if they found for the plaintiff, they must find in one or the other of said sums. In disregard of these instructions they have returned a verdict for a different sum, and it is impossible for us to say whether the $750 is found entirely on the ground of fraudulent misrepresentation or partly on said ground and partly on the failure of Beatty to indorse the note. If but one ground of liability had been alleged and the verdict had been for a less amount than the pleadings and evidence showed plaintiff to have been entitled to recover, the defendants would not be heard to complain; but when as in this case two grounds are alleged and the verdict shows that the jury have disregarded the charge of the court in fixing the amount of liability, it can only be a matter of conjecture as to whether they gave a larger amount on one ground or a smaller amount on the other than the evidence and charge of the court authorized, and such verdict should be set aside for uncertainty. We think appellants' assignment challenging the verdict as being irresponsive to the pleadings, evidence, and charge of the court should also be sustained. Sims v. Price, Dall., 554; Ellman v. Brown, 64 Texas, 184; Moore v. Moore, 67 Texas, 295.

We deem it unnecessary to notice appellants' remaining assignments further than to say, that barring the assignments which attack the ver-

dict as being unsupported by the evidence, upon which we do not pass, none of them present any reversible error or any error that is likely to occur upon another trial of this case.

Appellee by cross-assignments complains of the action of the trial court in refusing to submit several special charges requested by him, and also in erroneously charging the jury as to what constitutes actionable false representation. The first of these assignments is as follows: "The court erred in refusing to give special charge number 1 requested by appellee, to wit: 'Where an agent is employed to buy or sell for his principal, or negotiate a trade for him, it is the duty of the agent to act solely in the interest of the principal, and should the agent be or become an interested party without disclosing the fact to his principal, and sell his own property to his principal or buy his principal's property himself, or pay himself, or cancel his own liability with the funds or property of the principal, the said agent would be guilty of constructive fraud, and if it were shown that the principal was damaged thereby, the agent would be liable to the principal to the extent of same.'"

We think this charge as an abstract proposition of law is perfectly sound, but we do not think it applicable to any issue raised by the evidence in this case. It is true the undisputed evidence shows that Beatty was indorser upon the McKinnon notes paid by appellee, but it also shows that said notes were secured by a lien upon the land sold appellee by McKinnon and that said land was of ample value to fully protect Beatty in his indorsement. This lien having been discharged by the payment of said notes, and appellee being the owner of said land and having received the benefit of the value of same by reason of the discharge of Beatty's lien, it can not be said that Beatty's liability was canceled or discharged with the funds or property of appellee. We think the court below did not err in refusing to give this instruction to the jury.

Appellee's second cross-assignment complains of the refusal of the trial court to give special instruction number 2 requested by appellee. This instruction in substance tells the jury that the failure of Beatty to inform the plaintiff that he was an indorser upon the notes which plaintiff agreed to pay and did pay was a fraud upon plaintiff and would entitle plaintiff to recover whatever amount he was shown to have been damaged by the assumption and payment of said notes. The fact that Beatty failed to make this disclosure to plaintiff was a circumstance which the jury might properly consider in connection with all the evidence in the case in determining the question of defendant's good faith in the transaction; but the jury should not have been told as a matter of law that such fact established fraud on the part of defendants.

Appellee's third cross-assignment assails the charge of the court in instructing the jury that false representations to be actionable must be known to be false by the person making them. This assignment is well taken. A misrepresentation may be actionable whether the party mak-

ing it knows it to be false or not. In Mitchell v. Zimmerman, 4 Texas, 80, our Supreme Court say: "But whether the party thus misrepresenting the fact knew it to be false or made the assertion without knowing whether it was true or false, is wholly immaterial; for it has been justly said the affirmation of what one does not know or believe to be true is equally in morals and law as unjustifiable as the affirmation of what is known to be positively false."

Because of the errors before indicated the judgment of the court below will be reversed and the cause remanded, and it is so ordered.

*Reversed and remanded.*