Opinion delivered April 13, 1888.

| 70 | 475 |
| 85 | 494 |

## No. 5961.

### GEORGE H. GASSOWAY *v.* GEORGE W. WHITE.

1. HOMESTEAD ABANDONMENT.—The occupation of the business homestead of an insolvent by his assignee, to whom possession is delivered with the merchandise contained therein, will not, if possession for business purposes be resumed, as soon as the assignee discharges the trust by a disposition of the goods, work an abandonment of the homestead rights. If the owner resumes possession and occupies the place for the purpose of doing a commission business, but fails to get custom, the fact that he is unable to induce others to patronize him will not work an abandonment of his claim to the property as a business homestead. If the apparent effort to transact business was a sham resorted to for the purpose of shielding the property, the homestead right would be lost. The fact that he had not obtained license to do business would be immaterial, if the business attempted was legitimate.

2. NEW TRIAL.—A new trial for newly discovered testimony will not be granted when its object is merely to contradict an inference deducible from the testimony of the successful party, and when the affidavit of the impeaching witness is not filed and it is not shown that his testimony could be obtained on another trial.

APPEAL from Falls. Tried below before the Hon. B. W. Williams.

*Goodrich & Clarkson,* for appellant: In order to protect a place of business as a homestead, the claimant must maintain

and conduct an actual business, intended at the time as an actual vocation or business. A mere pretense of business, intended only to protect his property as against his creditors, is not such a business as will protect the place of such pretense as a homestead. (State Const., sec. 51, art. 16; Shryock v. Latimer, 57 Texas, 674; Tillman v. Brown, 64 Texas, 183; Wright v. Straub, 64 Texas, 64; Miller v. Menke, 56 Texas, 539; Doust v. Trammell, 27 Texas, 129; Stone v. Darnell, 20 Texas, 11.)

The actual use of the house as a place of business being necessary to protect the store house from levy of attachment, the defendant White abandoned the same as a homestead when he ceased his business there, in September, 1884, and procured his license as a drummer. (Scheuber v. Ballow, 64 Texas, 166; Brooks v. Chatham, 57 Texas, 31.)

A business which is a mere incident to the business of the head of the family, will not protect the place where such incident business is done, such as the storage of the goods sold. (McDonald v. Campbell, 57 Texas, 615.)

The court erred in overruling the plaintiff's motion for new trial. Because the verdict of the jury is contrary to the evidence in this, the alleged pursuance of the business of commission merchant, set up by the defendant, being without license or the payment of occupation tax, is a penal offense and can not protect the place where such business is done as a homestead. (Tillman v. Brown, 64 Texas, 181; Penal Code, art. 110, p. 16; Rev. Stats., art. 4664, p. 674.)

*Martin & Dickinson*, for appellee: The evidence showed that appellee was engaged in the business of commission merchant at the date of the levy of the attachment, and the charge that the business was a pretended one to protect a homestead is negatived by the verdict of the jury. (Const., art. 16, sec. 51; Scheuber v. Ballow, 64 Texas, 166; Miller v. Menke, 56 Texas, 539; Shryock v. Latimer, 57 Texas, 674; Watkins v. Davis, 61 Texas, 414; 46 Texas, 627.)

The house is made of brick. and is fifty feet by one hundred feet in size, cut into two rooms of twenty-five feet each lengthwise by a partition wall. One of the rooms was shelved, having been recently used as a room for dry goods. Marlin claims about two thousand inhabitants. (Const., art. 16, sec. 52; Hancock v. Morgan, 17 Texas, 586; Thompson on Homesteads, secs. 135–139.)

GAINES, ASSOCIATE JUSTICE.   Appellant brought suit in the court below against appellee on a promissory note, and caused attachment to issue and to be levied upon a brick store house and lot in Marlin, which were then the property of appellee. The latter claimed the property as his place of business, and hence as a part of his homestead.

In September, 1884, appellee and one Pringle as partners were doing business in the house in controversy, in one room of which they sold dry goods, etc., and in the other they kept a saloon.   On the twentieth of that month they made an assignment.   The assignee took possession of the merchandise and house, and retained possession of the latter until the assigned property was sold.   As soon as one room of the house was clear appellee put up a sign as commission merchant, and as he testifies, began business as such in the house.   He got a license from the Comptroller, according to his testimony upon the trial, which authorized him to do business in any part of the State, but did not take out either a county or city license.   His commission business was confined to some eighty bushels of oats, which he stored in the building and a very small part of which he sold.   The testimony shows that he usually came down and opened up the house during the morning, but that this was not always done.         •

The attachment was levied on the fourteenth day of December next after the assignment.   The jury found that the store house and lot were not subject to the attachment, and appellant complains first, that the court erred in overruling the motion for a new trial because the verdict of the jury was contrary to the evidence in this particular.

In Scheuber v. Ballow, 64 Texas, 166, the principle is announced that the mere failure of the owner of a business homestead and the consequent cessation of the business in which he fails, does not immediately subject the property to forced sale, and it is said in the opinion that "a reasonable time ought to be allowed him to adapt himself to his changed condition, and the property will not be subject to execution unless it is clear that there has been an abandonment."   It appears in this case that as soon as the assignee ceased to use a part of the house, the appellee occupied it, ostensibly for the purpose of doing business, but he did virtually nothing.   Now, if it were true that it was necessary that the claimant of a business homestead should actually succeed in getting custom in order to

exempt the property, then it might well be urged that there was no exemption in this case. But we apprehend that such is not the law. A carpenter may acquire and open a shop, and failing to get custom may temporarily seek employment in another line. A physician or a lawyer may purchase and establish an office and wait long for a patient or client to cross its threshhold. Can it be claimed that in any of these cases the property (the owner being the head of a family) would become subject to forced sale? We think not. So in this case, the appellee being insolvent could not buy and sell on his own account, and could only buy and sell for others. He might open his house in good faith for the purpose of doing a commission business, and yet might, for the want of customers, do no business. In such case we think the property would clearly be exempt. He testified substantially to these facts, and there is nothing in the testimony inconsistent with them. If he ever refused to do business in his proposed line it is not shown in the statement of facts. The evidence introduced by appellant shows that appellee usually opened his house every day, from which it is to be inferred he had some expectation of getting custom. If the jury believed appellee (and we can not say from the record before us he was not entitled to credit), the verdict is correct.

The policy of the exemption of a business homestead may be questioned, but its object is apparent. It is allowed, not for the successful, but for the unfortunate. It would be of no avail to a merchant if it ceased upon his failure as a dealer in his own wares. As long as he is attempting in good faith to use it for the purposes of business it should be protected. When such use is definitely abandoned, it is no longer exempt.

It is true that if the opening up of the house ostensibly for business was a mere pretense, resorted to for the purpose of shielding the property from the payment of debts, after the appellee had made an assignment, and after he had abandoned the intention of using it as a place of actual business, it would have lost its homestead character, and would have been subject to the attachment. But the question was submitted to the jury by the court, and their verdict must be held conclusive upon the question.

But it is claimed that the verdict is contrary to the evidence because the house was not adapted and necessary to the business which appellee professed to carry on. If it had been

shown that he was engaged at this time as a commercial trav-
eler and actually traveling, and that the house was not neces-
sary to such business, it would not be protected from forced
sale.  This matter is not made very clear from the testimony.
It seems he had a license to sell all over the State, but it is to
be inferred from the evidence that he remained in Marlin and
usually kept the house open.  It is probable if he had suc-
ceeded in getting goods or produce upon consignment (if such
was really his object) that the entire store house would have
been needed for the purposes of his business.

It is also insisted that, because appellee had no license to
carry on the business of commission merchant, his business
was illegal, and that therefore the house was not exempt; and
we are referred to the case of Tillman v. Brown, 64 Texas, 181,
in support of this proposition.  In that case it was held that a
house which was used ostensibly for a legitimate occupation,
but really for the purpose of gaming, could not be protected
from forced sale as a business homestead.  The business to be
carried must be a lawful business.  But it by no means follows
that, because a man may violate the law by carrying on a
legitimate occupation without paying the tax, he thereby sub-
jects the house where it is carried on to forced sale.  The busi-
ness remains a lawful one; it is the failure to pay the tax that
is penal.  We can not assent to a doctrine which would subject
every business homestead in the State to forced sale as soon as
its owner neglected to pay his occupation tax.

It is further insisted that the charge given by the court is
erroneous, and that the instructions asked by the appellant and
refused by the court should have been given.  We think, how-
ever, that the charge of the court clearly presented the vital
issue in the case—that is to say, whether appellee was attempt-
ing in good faith to do business in the house in controversy;
or whether his conduct was a mere pretense, to protect the
property from the claims of creditors.  Neither the assignment
upon the charge nor the proposition under it points out in what
respect the instructions asked differs from those given by the
court, and, upon careful examination, we think them substan-
tially the same.

There was a supplemental motion for a new trial on the
ground of newly discovered evidence, and it is complained
that there was error in overruling this motion.  But we find
that the newly discovered evidence (the object of which was to

show that the appellee did not have the oats for sale on commission as he testified) is not necessarily inconsistent with his testimony. It is to be inferred from the affidavit itself that the affiant, Aldridge, did not carry the oats to appellee in person, but sent them by his son. He deposes that he understood from his son that he told appellee to sell the oats, but that appellee was to make no charge. Appellee did not expressly testify that he was to make any charge, though such may be the implication from his evidence. It does not appear why the affidavit of the son was not filed, or whether his testimony could have been obtained upon another trial or not. The testimony of Aldridge as to what his son told him is hearsay, and could not be admitted in evidence. A new trial certainly will not be granted on account of the discovery of inadmissible evidence.

As to the affidavit of Barton, it is too indeterminate to justify the granting of a new trial. He deposes that the Armstrong mentioned by appellee is the party to whom he sold part of the oats, had moved away from the county in 1883, and that, so far as witness ever heard, was never in or about Marlin afterwards. Could not Armstrong have come back temporarily without witness having heard of it? How does the witness know that the Armstrong about whom he deposes is the same person testified about by the appellee. The record shows that appellee names him simply as "Armstrong," and states no other fact by which the person he meant can be identified. A new trial should not be granted for such testimony as that deposed by Barton.

The controling question in this case was peculiarly within the province of the jury, and they having determined it upon sufficient evidence, the judgment should not be disturbed.

There being no error in the proceedings of the court below, the judgment is affirmed.

*Affirmed.*