**BLAYLOCK et al. v. SLOCOMB. (No. 697.)***

(Court of Civil Appeals of Texas. Beaumont. March 14, 1923. Rehearing Denied April 18, 1923.)

1. **Homestead 🗝️165—Business homestead exemption ends if owner abandons it for such purposes without intent to resume.**

If the owner of a business homestead ceases to use the premises for business purposes with no intention to resume them, or to pursue some other calling or business on the homestead property, the homestead exemption ends.

2. **Homestead 🗝️168—Temporary lease held not to destroy business homestead exemption.**

That the owner of a business homestead is unable, because of ill health, or for any other good reason, to further conduct the business in which he has been engaged, and temporarily rents the premises, does not immediately subject the property to forced sale, but he is permitted a reasonable time within which to adapt himself to his changed conditions and to arrange for and begin other business of some kind.

3. **Homestead 🗝️181(1)—Party asserting abandonment of business homestead has burden of proof.**

The party asserting the abandonment of a business homestead has the burden of proving it, and the proof must be clear and conclusive that its use has been discontinued with the intention not to resume it.

4. **Homestead 🗝️168—Business homestead held not abandoned by leasing it temporarily.**

Where the owner of a business homestead had been engaged in the bill-posting business, together with a restaurant business therein, and because of ill health sold his restaurant business, leasing the premises to the purchaser for 12 months, at the expiration of which time he intended to engage in some other business therein, in the meantime continuing his bill-posting business, *held*, that the business homestead was not abandoned.

Appeal from District Court, Milam County; John Watson, Judge.

Suit by S. J. Slocomb against L. L. Blaylock and others for an injunction. From an order perpetuating the injunction, defendants appeal. Affirmed.

See, also, 245 S. W. 648.

S. M. Burns, of Cameron, and Byers & Cavanagh, of Houston, for appellants.

Chambers & Wallace, of Cameron, for appellee.

O'QUINN, J. Appellants, on the 10th day of December, 1919, caused a writ of execution to be levied upon a certain house and lot in Cameron, Milam county, Tex., and was advertising the property for sale. Appellee, on the 19th of December, 1919, brought this suit in the district court of Milam county to restrain appellants from selling said house and lot, alleging that same was his business homestead, and praying for a writ of injunction to restrain appellants from selling same. The writ was granted, and upon a trial of the issue before the court, without a jury, judgment was rendered for appellee, adjudging the property to be his business homestead, and perpetuating the injunction restraining appellants from selling same, from which appellants have appealed.

The court filed the following findings of fact and conclusions of law:

"Findings of Fact.

"On the —— day of ——, 19—, in the district court of Galeston county, Tex., in cause No. 18910, styled Focke, Wilkins & Lange v. Slocomb and Cammer, judgment was rendered in favor of the plaintiffs and against the defendants in the sum of $1,321.99, which judgment was on the 5th day of December, 1919, the property of the defendants Wilkins & Lange, a firm composed of Alvin T. Lange, Mrs. Augusta Lange, and Henry Wilkins, who succeeded the plaintiffs in judgment.

"On the 5th day of December, 1919, the said defendants Wilkins & Lange caused an execution to issue upon said judgment to Milam county, Tex., which was placed in the hands of L. L. Blaylock, sheriff of Milam county, for execution. It was not shown whether said judgment at said time was dormant or not.

"On the 10th day of December, 1919, the said sheriff did levy upon a certain brick building and lot upon which it was situated, described in plaintiffs' petition, and did advertise the same for sale by publishing as required by law for the regular sales day in January, 1920.

"On the 19th day of December, 1919, the plaintiff Slocomb filed his petition in this court asking for writ of injunction to restrain the said sale because the land was his homestead, and the temporary writ was awarded and duly issued, and in compliance with the writ, and sale under the execution and levy as advertised has not been made.

"The defendants Wilkins & Lange have answered, raising by their pleading the issue as to whether or not the property levied upon was at the time of the levy thereon the business homestead of the plaintiff S. J. Slocomb.

"I find that on December 10, 1919, the plaintiff S. J. Slocomb was the owner by fee-simple title of the said building and lot; that he and his father purchased the same in 1882 and erected the building thereon; that some time afterwards the plaintiff bought his father's interest, and since that time until now has been the sole owner thereof.

"The plaintiff began business in said house as soon as the same was erected, some time prior to 1884, the business then being a grocery and quart liquor business. This business continued until 1892, when the plaintiff opened a retail liquor house in the building, which he conducted until 1902. Then he ceased that business, and immediately opened a restaurant in the said building, which he personally conducted continuously until December 1, 1919, when he delivered the same to one Landis, having previously sold the same to him for delivery on that day.

"The plaintiff was a married man with three children, but only his wife resided with him at the date of the levy thereon. I find that he was the head of a family within the meaning of the law.

"Besides the lot and brick building thereon in controversy, the plaintiff owned a house and lot in Cameron, upon which he and his wife resided as their resident homestead, and upon which he resided continually since 1884, and upon which he now resides, and which is, in fact, his resident homestead. This resident lot is of the value, exclusive of the improvements thereon, of $1,000, and the lot in controversy, exclusive of the building and improvements thereon, is of the value of $3,000.

"I find that on November 1, 1919, the plaintiff sold his restaurant business to said Landis and made a written lease to him for said brick building for one year, beginning December 1, 1919, at which time the restaurant was delivered.

"I find that in April, 1919, the plaintiff was severely burned on the hands, arms, and body by an explosion of gasoline, and was wholly disabled for several months thereafter, and that he has suffered permanent injury therefrom, and was partially disabled at the time of said sale and lease, and is now partially disabled; that while he was confined in the hospital from the accident his wife conducted the restaurant business, and the testimony is undisputed that she was not in good health at the time of the sale thereof. I further find that by reason of the ill health of the plaintiff and his wife that he desired to sell the restaurant business, and did offer the same for sale, but that, in order to sell the same, it was necessary for him to give a lease upon the building to the purchaser, and that he did make the said lease for the purpose of effecting the sale, intending the same to be, and the same was, in fact, a temporary lease only.

"I further find that it was the intention of the plaintiff that as soon as the 12-month lease expired to resume business upon the said lot and brick building, the exact nature of which he had not then provided for, but that he contemplated entering the grocery business, or some mercantile business of such nature that the plaintiff could attend to in his injured condition.

"I further find that for some years prior to the sale of the restaurant business by the plaintiff, and on the date of the said sale, and now, he ran a bill-posting business contemporaneously with his restaurant business, and that in such business he had an equipment consisting of

brushes, ladders, paper, etc., and that he was a member of a bill post association which sent him bills to be posted, and that people going through the country and advertising by such methods would employ him to do the posting for them in Cameron and the vicinity thereof, which he usually did by hiring some one to assist him, looking after it in person; that in conducting this business it was necessary for him to have an office, and that he used the brick building wherein said restaurant was conducted, and which is in controversy, as such office, keeping therein his said equipment, desk and safe used by him in both said business. I further find that, when he sold his restaurant business, he reserved his desk, safe, and all equipment and furniture used by him in the bill-posting business, and that after he had made the lease on the building, but before the levy of the writ of execution herein, the plaintiff and the said Landis, the lessee, made an agreement whereby the plaintiff was permitted to have office room in said building, keeping his desk, safe, and equipment for bill posting therein; that, after Landis took possession of the building and restaurant, the plaintiff continued to use the same as his office, having never moved out of the building, and was using the same as his office on the date of said levy; that he was in the office practically every day interviewing his bill-posting customers therein, and conducting his said business therefrom; and that it was never plaintiff's intention at any time to abandon the said building as his business homestead; and that he was actually occupying the same in the manner stated, as his business homestead, at the date of said levy.

### "Conclusions of Law.

"From the findings of fact herein stated, I conclude, as a matter of law that the brick building and lot upon which it was situated, described in plaintiff's petition, was on the 10th day of December, and for many years prior thereto, and now, is the business homestead of the plaintiff S. J. Slocomb, and as such exempt to him under the Constitution and laws of the state, and that the same was not subject to the levy of the execution hereinbefore described, and that the said levy should be vacated and set aside, and the sale thereunder perpetually enjoined; that the temporary writ of injunction heretofore issued restraining the sale of the property under the execution and levy thereof was properly issued; that the same should be perpetuated."

The record fully supports the findings of fact, and we adopt same.

The single controversy in this case is whether the property, at the time the writ of execution was levied upon it, was the business homestead of appellee.

The premises were leased by appellee on December 1, 1919, and the writ was levied December 10, 1919. It is undisputed that the property in question for many years had been, and at the time of the sale of the restaurant and leasing of the premises to the purchaser was, the business homestead of appellee. But appellants contend that, when appellee sold out his restaurant, that being his principal business, and leased the premises for one year, he abandoned said premises as his business homestead, and that same was then subject to execution. Appellee denies that he had abandoned his business homestead, and insists that the leasing was temporary, and that he at all times intended to resume business at the expiration of the one-year lease.

It appears from the record, as is reflected by the above findings of fact by the court, that appellee's suspension of business was not permanent, but only temporary. He could not dispose of his restaurant business without leasing the building in which it was situated for one year. He refused to lease it for a longer period because, after resting up, he desired to go into some other business, most probably the grocery business, but surely in some business. The reason that appellee sold his restaurant business was that he was old (67 years), and had recently gotten severely burned on his hands and arms, by reason of which he could not continue the business, as he and his wife were doing practically all the work in connection with same. He testified:

"My reason for selling was that I was disabled, and my wife was losing her health. She was doing the cooking, and I was trying to wait on the tables, and we could not do it; and we could not sell it without renting the building, and we rented it temporarily for a year. In my sale to Landis I could not effect it without temporarily leasing the building for a year."

He further testified that for several years before he sold his restaurant he was engaged in the bill-posting business, was a member of the bill posters' association, and kept his supplies, implements, desk, and office in the same building with the restaurant; that when he sold his restaurant he arranged to continue his bill-posting business and to keep his supplies, implements, desk, and office in said building, and did do so, and was so doing at the time of the levy. His testimony as to the reason for selling the restaurant, the conducting of the bill-posting business, and its being done in and from said building, the temporary leasing of the building in order to sell the restaurant, the continuation of the bill-posting business after the sale of the restaurant, and the lease of the premises, and the intention to go into other business at the end of the lease, was all corroborated by his wife, and was not in any wise disputed by any witness, nor by any fact, other than, as contended by appellants, that by selling out the restaurant business and leasing the premises for a year appellee had abandoned his business homestead.

[1, 2] It is well settled that, if the owner of a business homestead ceases to use the premises for business purposes, with no in-

tention to resume them, or to pursue some other calling or business on the homestead property, in such case the homestead exemption ends. Hill v. Hill, 85 Tex. 103, 19 S. W. 1016; Kaufman & Runge v. Fore, 73 Tex. 308, 11 S. W. 278. But it is equally well settled that the inability of an owner of a business homestead, because of ill health or for any other good reason, to further conduct the business in which he has been engaged, and by reason thereof ceases to carry on such business in the business homestead, and temporarily rents the premises afterwards, does not immediately subject the property to forced sale, but he is permitted a reasonable time within which to adapt himself to his changed conditions and to arrange for and begin other business of some kind, and the temporary renting of the premises in the meantime will not constitute an abandonment thereof as a business homestead. Scheuber v. Ballow, 64 Tex. 166; Bowman v. Watson, 66 Tex. 295, 1 S. W. 273; Gassoway v. White, 70 Tex. 475, 8 S. W. 117; Hargadene v. Whitfield, 71 Tex. 482, 9 S. W. 475; Malone v. Kornrumpf, 84 Tex. 454, 460, 461, 19 S. W. 607; Constitution, art. 16, § 51.

[3] The party asserting abandonment of the homestead has the burden of proving same, and the proof must be clear and conclusive that its use has been discontinued with the intention not to resume it. Scott v. Dyer, 60 Tex. 139; Bogart v. Bank & Trust Co. (Tex. Civ. App.) 182 S. W. 678-681; Dunlap v. English (Tex. Civ. App.) 230 S. W. 830.

[4] The question of intention to abandon is one of fact, and, in our opinion, appellant did not meet the burden of proof, but, to the contrary, we think the evidence amply sustains the court's finding that appellee did not intend to and in fact did not abandon his business home, but that he intended to engage in some other business at the expiration of the year's lease.

The judgment is affirmed.