## L. T. STANLEY ESTATE v. FIRST NAT. BANK OF COOPER. (No. 3769.)

Court of Civil Appeals of Texas. Texarkana. Jan. 23, 1930.

Rehearing Denied Jan. 30, 1930.

and the administrator and guardian. The appellant contends that there was error in the judgment of the district court in foreclosing the attachment lien claimed by the bank, because (1) the minor children of L. T. Stanley, deceased, were legally entitled to take the land in suit as homestead or as property free from all claims of creditors, including the attachment lien, and (2) the order of the probate court setting aside the land to the minor children to use and occupy as a homestead was conclusive and must stand until set aside, and may not be attacked collaterally. If the property were the homestead of L. T. Stanley at the time of the levy of the attachment, then, under the Constitution and the laws of this state, the attachment lien upon the land was absolutely void and could not be made valid. Section 50, art. 16, Const.; article 3832, R. S. And it is the established rule in this state that, in virtue of the constitution and laws of this state, the homestead on the death of the owner descends and vests absolutely in the heirs if a constituent member of the family survives, and is not assets subject to the payment of the simple debts of the decedent. Section 52, art. 16, Const.; article 3499 R. S.; Cameron v. Morris, 83 Tex. 14, 18 S. W. 422; Zwernemann v. Von Rosenberg, 76 Tex. 522, 13 S. W. 485; Childers v. Henderson, 76 Tex. 664, 13 S. W. 481; Lacy v. Lockett, 82 Tex. 190, 17 S. W. 916; Roots v. Robertson, 93 Tex. 365, 55 S. W. 308, and other cases. But in this case the attachment lien could not be held to be ineffectual on the ground that the land was homestead at the time of the creation of the attachment lien, nor could the children claim that it descended and vested absolutely in them; for in the circumstances the trial court was authorized to find as a fact, as warranted by the evidence, and it will be presumed that he did so, that L. T. Stanley had abandoned the use of the land as a homestead, and had abandoned it prior to the levy of the attachment. And, although the land was not the homestead of L. T. Stanley at his death, yet, in view of the present statutes, the children through the guardian could not legally predicate the right to a claim of preference to the property free of the attachment lien, because it was conclusively shown that the attachment lien was created during the lifetime and existing at the death of L. T. Stanley. Article 3492, appearing in the Revision of Civil Statutes in 1925, reads: "No property upon which there is a valid subsisting lien or encumbrance, shall be set apart to the widow or children as exempt property, or appropriated to make up allowances made in lieu of exempt property, or for the support of the widow or children, until the debts secured by such liens are first discharged. This article applies to all estates whether solvent or insolvent." The above article is a revision and alters the language of the article enacted in 1917, c. 34, p. 60, and carried as article 3420, Vernon's Ann.

S. W. Pratt, of Cooper, and G. W. Dunaway, of Midland, for appellants.

McKinney & Berry, B. D. Clower, and J. G. Turner, all of Cooper, for appellee.

LEVY, J. (after stating the case as above). Appellant's first and second propositions present, in effect, for determination, the priority of claim to the land between the bank

Civ. St. Supp. 1918. This act of 1917, c. 34, p. 60, was an amendment of article 3420 of the Revised Civil Statutes of 1911, enlarging its terms. It was under the statutes of 1911, prior to amendments, that the case of Krueger v. Wolf, 12 Tex. Civ. App. 167, 33 S. W. 663, cited and relied upon by appellant, was decided, and the case would not rule the present appeal. The present article, as an amendment by revision, would constitute new legislation. Briggs v. Buckner (Tex. Civ. App.) 19 S.W.(2d) 190. As will be observed, the language of the present article 3492 plainly extends the prohibition against setting apart property to the widow or children to property generally "upon which there is a valid subsisting lien or encumbrance." Such general language would include not only contractual liens, but involuntary liens such as attachment liens. It can be fairly implied as the intention of the Legislature that precedence was not to be given allowances to the wife or children over any subsisting lien or encumbrance upon the land. Article 3494 is not repugnant to or inconsistent with the above article, because article 3494 stands apart from the "lien or encumbrance" upon the land and relates to "debts of the estate" other than those secured by liens.

■ The second point cannot be sustained, as the jurisdiction of the district court was not terminated by the death of L. T. Stanley and it was empowered to proceed to judgment, as was done. Farmers' & Merchants' Nat. Bank v. Jones (Tex. Civ. App.) 254 S. W. 251. The question of whether or not the land constituted the homestead at the time of the attachment and the death of Mr. Stanley was involved in the controversy in the district court, and the probate court had no authority to determine that legal question. The mere setting aside of the land as homestead by the probate court was not conclusive either that it was a homestead or that it was exempt from the attachment lien as an allowance in lieu of homestead. Green v. Cass County State Bank (Tex. Civ. App.) 7 S.W. (2d) 620.

■ By the third proposition the appellant urges that there was no evidence to show abandonment of the homestead. It is believed the circumstances warranted the trial court in finding as a fact, as must be presumed he did, that L. T. Stanley had abandoned the use of the land as homestead. He moved from the land after divorce in 1922, and went into another state and continuously resided there until his death. His children were awarded to the custody of the mother, and resided with her in Chicago. There were no acts indicating an intention to further use the property as homestead. The mules left on the place were sold to Mr. Eddins, and there was no further farming or use and no improvement of any kind made on the land.

This court could not say as a matter of pure law that there was no intention to abandon the land as homestead.

The judgment is affirmed.