## HOUSTON CHRONICLE PUB. CO. v. ALLEN.
### No. 2559.

Court of Civil Appeals of Texas. Beaumont.
April 20, 1934.

Rehearing Denied April 25, 1934.

Huggins, Kayser & Liddell, of Houston, for appellant.

Morris, Clark & Darden, of Conroe, for appellee.

O'QUINN, Justice.

On March 27, 1933, appellant, the Houston Chronicle Publishing Company, recovered a judgment in the justice court of Harris county, Tex., against Crawford Patrick, W. S. Weisinger, and appellee, L. W. Allen, in the sum of $100.49 and the further sum of $9.30 costs.

On April 7, 1933, appellant sued out an alias execution on said judgment and placed same in the hands of the sheriff of Montgomery county, Tex., who levied said execution upon a portion of lots 1 and 2 in block 15 of the Ralston addition to the city of Conroe, Tex., belonging to appellee, Allen.

After making such levy the sheriff advertised the property for sale, but on June 6, 1933, before the sale was to be made, appellee, L. W. Allen, filed petition for injunction against appellant and G. H. Hooper, sheriff, praying that they be restrained from selling said property, alleging that same was "a part and parcel of his home in the town of Conroe, Texas, said home consisting of all of Lots Nos. One (1) and Two (2) in Block Fifteen (15) in the Ralston Addition to the town of Conroe, Texas," and that same was exempt from forced sale under the Constitution and laws of this state.

Temporary injunction was issued restraining appellant and the sheriff from selling or attempting to sell the property. Motion was

made to "dismiss and set aside" the injunction on the ground that, if the property levied upon had ever been a part of the homestead of appellee, L. W. Allen, and his wife, they had abandoned same by leasing it to the Magnolia Petroleum Company for a term of fifteen years, and that said lessee immediately went into possession of said leased premises, improved same, and was using same as a filling station, and paying rent therefor, and that said L. W. Allen had designated the remainder of said lots as his homestead and was using same as such.

The case was tried to the court, Judge J. L. Manry, judge of the Ninth judicial district, without a jury, and judgment entered denying the motion to "dismiss" the temporary injunction, and making same permanent, in said judgment finding and holding that the premises in controversy was the homestead of appellees. This appeal is from that judgment.

The case was tried on an agreed statement of facts. It appears that for several years prior to October 12, 1932, appellees, L. W. Allen and wife, had owned and maintained as their residence homestead a triangular tract of land located in the city of Conroe, Tex., consisting of lots Nos. 1 and 2 in block No. 15 of the Ralston addition to said city. This property was bounded on each of its three sides by a street; First street on the west, Second street on the east, and Davis street on the south. The property fronted about 100 feet on each of these streets. There was also a street where the lots came to an angle or point on the north. Allen's residence was located approximately in the center of the triangular tract, partly on each lot, and faced Davis street on the south. The value of said premises, less improvements, was less than $5,000.

Appellee, Allen, built a small frame structure in the southwest corner of his triangular tract to be used as a filling station. He also installed three gasoline pumps, a cement auto washing space, and other things necessary for operating the filling station. The frame structure extended to within 9 feet of the southwest corner of Allen's residence, and was partly between his residence and First street and wholly between his residence and both First street and Davis street where they came together or cornered.

On October 12, 1932, appellees leased to the Magnolia Petroleum Company, for a period of fifteen years, the filling station describing the ground on which it was situated, as follows: "A parcel or plot of ground being a part of lots Nos. One (1) and Two (2) in Block No. 15, in the Ralston Addition," and described same by metes and bounds, embracing about 25 feet by 50 feet. The appellees were to receive as rent 1 cent a gallon on each gallon of gasoline sold, payable monthly. This is the property appellant insists is subject to forced sale.

It appears that at the time of the erection and equipment of the filling station, and at the time it was leased to the Magnolia Petroleum Company, and at the time of the levy of the execution on the property, the health of said Allen was such that he could not operate the filling station himself, nor engage actively in any business vocation. Allen would seek customers and request his friends and other automobile owners in his locality, to patronize this filling station. This would augment the amount of rental received by him, as said rental was entirely the 1 cent a gallon paid him on each gallon of gasoline sold at said station. He had no other employment, and his only source of revenue was the rental received from the filling station. He also assisted the operators of the filling station in constructing wash racks, rounters, and sheds, and in any other way he could to aid in accommodating customers. Appellees used a portion of the 25 by 50 feet on which the filling station is situated to park their car day and night. They also used it as a passageway in "cutting across" on their way to and from their residence to town. The water mains of appellee's home connect with the filling station and water from his home premises is used by the operators of the filling station. Appellee, L. W. Allen, has a binding agreement with the lessee that he may take over and operate for himself the filling station at any time when his health will permit.

The lease of the filling station was executed October 12, 1932. The execution was levied on same April 7, 1933, less than six months after the execution of the lease. Appellees contend that they never intended to abandon the premises as a part of their home, and that the leasing was only temporary, they intending, under their binding agreement with the lessee, to take over and operate the filling station as soon as appellee L. W. Allen's health would permit. Appellant contends that the fact that appellees executed a lease of said property for 15 years and placed the lessee in possession under the lease ipso facto shows an abandonment of the property as a part of the home.

The question of abandonment is one

of intent. The question of intent is one of fact. The Constitution, article 16, § 51, provides that the temporary renting of the homestead shall not change the character of same, when no other homestead has been acquired. This provision bears as directly upon the question of intent as it does upon the question of occupancy. If the surrender of the use and occupancy of the homestead property to a tenant be with the intent that it shall not again be used as a homestead, then the abandonment is complete, though the term covered by the rental contract is for but a short period of time. So, the determination of whether or not the renting is temporary or permanent is dependent upon the intent of the head of the family as to whether or not he will again use the property as a homestead. If it be his intent to again use the property as a homestead, the rental is temporary; but if it be his intent not to again so use it, then it is permanent; and this is so without reference to the length of time covered by the rental contract. Nunn on Texas Homestead Exemptions, p. 174, § 13.

The court, in passing upon the facts, found against appellant's contention of abandonment, and found in favor of appellees that the property sought to be subjected to execution was a part of their homestead. We think that the facts and circumstances disclosed by the record and set out above support this finding, and same is approved. Before the execution of the lease the whole of the two lots constituted the homestead of appellees. Their residence building is about half on each lot. L. W. Allen erected a small frame structure near his house in the southwest corner of the triangular space and equipped same to be used as a filling station. His health being such that he could not actively engage in this or any business vocation at the time, he leased the structure to the Magnolia Petroleum Company, with the understanding that, when his health was such as that he could operate the station, he could and would take same over and operate it himself. The fact that he was to receive 1 cent a gallon on each gallon of gasoline sold per month as rent, that he solicited his friends and the public to patronize the filling station, and otherwise helped in building up business for the filling station, point to actual good faith and intent to, when his health would permit, take possession of the property as a place of business for himself. Other circumstances, such as that he built the structure within 9 feet of his dwelling house, connected the water pipe of his residence with the filling station, and thus from his residence furnished water to be used in operating the station, used a portion of the filling station grounds upon which to park his family car by day and night, and also used a passageway across said grounds for himself and family to reach the street in going to and coming from town, all show, we think, that Allen from the first and at all times contemplated the continued use of said premises in connection with and as a part of his homestead.

The judgment should be affirmed, and it is so ordered.

Affirmed.