**PANHANDLE CONST. CO. v. HEAD et al.**

**No. 5064.**

Court of Civil Appeals of Texas. Amarillo.

Oct. 16, 1939.

Rehearing Denied Nov. 13, 1939.

Robert A. Sowder, of Lubbock, for appellant.

George W. Neill and R. L. Graves, both of Brownfield, for appellees.

JACKSON, Chief Justice.

The record discloses that on December 4, 1922, W. J. Head, by a proper deed of conveyance, acquired the title to Lot 16 in Block No. 22 in the original town of Brownfield in Terry County, Texas. Mr. Head was a barber by trade and some time after the acquisition of this lot, time not shown, he had erected thereon a building suitable for and in which to conduct his tonsorial business. On March 27, 1930, subsequent to the erection of the building, the city of Brownfield, after having complied with the paving procedure, executed and delivered to the Panhandle Construction Company and its assigns a certificate of special assessment for the pro rata cost of paving Lot No. 16, which had a frontage of twenty-five feet on Main Street. The action of the officials of the city evidenced by the certificate created a personal debt against Mr. Head for the cost and at-

tempted to fix against the lot a lien to secure the payment of the debt.

The Panhandle Construction Company sold, transferred and delivered the assessment certificate to the Realty Trust Company for a valuable consideration.

Mr. Head made default in the payment of the indebtedness and the Realty Trust Company instituted suit, Cause No. 1617, in the District Court of Terry County to recover a judgment for the debt and for foreclosure of its alleged lien on the lot. On February 2, 1932, on the findings of a jury, the court rendered judgment against Mr. Head for the sum of $354.64 principal, interest and attorney's fees but denied a foreclosure of the asserted paving lien "by reason of said property being now and at all times in dispute the business homestead of the defendant, W. J. Head".

This judgment became final and the Realty Trust Company on March 12, 1932 caused an abstract thereof to be filed, recorded and indexed in Terry County, as the law requires, and on September 29, 1932 execution was issued on the judgment and returned "nothing found". On the next day, September 30th, the Realty Trust Company for a valuable consideration re-transferred and re-assigned the judgment to the Panhandle Construction Company.

W. J. Head died November 26, 1933 and on May 11, 1937 the Panhandle Construction Company, the appellant herein, instituted this suit on the personal judgment obtained in Cause No. 1617 by the Realty Trust Company against the appellees, Lottie Head, Carrie Head Williams and her husband, Bud Williams, Layula Head Bonner and her husband, R. C. Bonner, Julia Head Patterson and her husband, Theron Patterson, Lester Lee Head, the widow and David Kent Head and Jack Quiline Head, the minor children of Virgil, the deceased son of W. J. Head and Lottie Head.

The appellant alleged that W. J. Head died intestate; that no administration was had on his estate and none was necessary; that Lottie Head was his surviving wife and the other named appellees constituted all the heirs of the deceased. It pleaded that by reason of the legal procedure, the paving certificate, the judgment thereon in Cause No. 1617 and the proper record of the abstract thereof, appellant had a valid and subsisting lien against the entire lot, which it sought to foreclose, but if its lien did not include the entire lot, then it asked in the alter-native that its lien be foreclosed on the one-half interest therein which descended to the heirs of W. J. Head as his interest in the community estate of himself and wife.

A guardian ad litem was appointed for the minors and they, together with all the other appellees, answered by a plea of res judicata, the basis of which was the decree in Cause No. 1617 that adjudged the premises involved to be the business homestead of the deceased and his surviving wife, and pleaded the premises was the business homestead of W. J. Head at the time of his death.

The case was submitted to the court without the intervention of a jury and the court decreed that the judgment in Cause No. 1617 did not constitute a lien on the lot and premises since the property was the business homestead of W. J. Head, deceased, when he died and adjudged that the abstract of judgment be cancelled and annulled, and appellant appealed.

The testimony shows that the wife had no separate property; that the deceased died leaving no property, either separate or community, except a residence homestead and the property involved in this suit; that no administration was had on the estate of the deceased and none was necessary; that he left surviving him all the appellees, including the wife, Lottie Head, and an unmarried daughter, Julia, later Mrs. Patterson, who continued to occupy the residence homestead as a family.

On February 2, 1932, in Cause No. 1617, the lot and improvements thereon were adjudged to be the business homestead of W. J. Head and his wife, and unless the property was abandoned as such homestead by W. J. Head between that time and the date of his death on November 26, 1933 his interest in such homestead passed to his children free from the lien asserted since it is not contended that the debt secured was for taxes, purchase money or improvements.

The law is apparently settled that "When the deceased leaves a surviving husband, or wife, or a surviving minor child, or children, or a surviving unmarried daughter, or daughters remaining with the family, no creditor of the estate of the deceased can as against any survivor, heir or devisee, appropriate any portion of the homestead property to the satisfaction of such debt, unless the debt be one that is secured by a valid lien on the home-

stead, as against the deceased." Nunn's Texas Homestead and Other Exemptions, page 264.

In L. T. Stanley Estate v. First Nat. Bank of Cooper, Tex.Civ.App., 24 S.W.2d 440, 442, writ refused, the court says: "It is the established rule in this state that, in virtue of the constitution and laws of this state, the homestead on the death of the owner descends and vests absolutely in the heirs if a constituent member of the family survives, and is not assets subject to the payment of the simple debts of the decedent."

See, also, article 16, sections 50 and 52 of the Constitution of Texas, Vernon's Ann.St.; article 3499, R.C.S.1925; L. A. Clift v. Kaufman & Runge, 60 Tex. 64; Zwernemann v. Von Rosenberg, 76 Tex. 522, 13 S.W. 485; Cameron v. Morris, 83 Tex. 14, 18 S.W. 422; Ward et al. v. Hinkle et al., 117 Tex. 566, 8 S.W.2d 641. This law is approved by Chief Justice Cureton in Johnson et al. v. Hampton, 117 Tex. 580, 8 S.W.2d 640, in the following language: "When Grant Collins died, his interest in the homestead passed to the children free of all debts and charges of every kind and character, except those specially permitted by the Constitution."

■ The property was adjudicated to be the business homestead of W. J. Head and wife on February 2, 1932 and the burden was on appellant to prove that W. J. Head abandoned such homestead before his death on November 26, 1933.

■ The rules for determining whether the residence homestead or the business homestead has been abandoned are substantially the same though greater or less weight may be given to similar facts and circumstances in the one or the other, but the rules that the homestead laws must be liberally construed to effectuate their purpose and that once acquired the homestead right can be defeated only by showing abandonment apply equally in both instances.

The lot and house involved is the community property of Lottie Head and her deceased husband.

Mr. Head had tuberculosis and the health authorities refused to issue the health certificate required to authorize him to operate a barber shop and for that reason, though the building was erected for that purpose, he never operated a shop therein; however, but for the legal restriction he was physically able to have done so until about three years before he died. He had an office in the building where he transacted a real estate business, acted as a clerk of the Woodmen of the World and conducted a storage business, allowing people who desired such accommodation and would pay therefor to store their automobiles in the building and get them at their convenience. He continued to use the building in this manner until shortly before he went to the tubercular hospital for Woodmen situated at San Antonio, Texas in April, 1931, and a little while before leaving he rented the building to different tenants for short terms. He was advised before he left for the hospital by his physicians the nature of his malady and that he could not recover. He returned to his home before he died and while never confined to his bed all the time, was never able to do any work but during the three years of his complete inability to labor before he died he frequently said that if he could get on his feet he would use the building to operate some business that the law did not prohibit on account of his health. He knew his condition was serious and doubted that he would ever recover but he hoped to the last that if he did not recover he would improve in health to such an extent that he could engage in some business and intended to use the building in which to conduct such business when and if his physical condition permitted. Had his health permitted he could have occupied the building, re-entered business as a real estate broker and conducted a storage business without the necessity of capital. Bowman v. Watson, 66 Tex. 295, 1 S.W. 273.

It is manifest that the deceased did not voluntarily abandon the property as his business homestead. It is equally obvious that he ceased to occupy and conduct his business in the house for the reason that he was physically unable to do so.

■ The law apparently is that the owner of a business homestead who because of ill health ceases to conduct a business therein and rents such property to others temporarily does not subject the property to forced sale.

In Malone et al. v. Kornrumpf et ux., 84 Tex. 454, 19 S.W. 607, 608, the Supreme Court says: "The husband, Edward Kornrumpf, pursued his business calling in the saloon building on the lot 22 until ill health compelled a cessation of his business.

There was no voluntary abandonment of the use of the property as a place for the exercise of his business vocation, nor was there any attempt to embark in any other enterprise or pursuit which the exempt property was not adapted to. On the contrary, the proof is that his intention was to resume business as soon as his health would enable him to do so. There was no vague purpose on his part, at some indefinite time in the future, to re-embark in his former business, dependent solely on his financial ability to do so. Neither do the facts show an intention to permanently rent the property, thus bringing the case within the operation of the principal so clearly announced in Wynne v. Hudson [66 Tex. 1, 17 S.W. 110], supra."

In Mealy et al. v. Lipp et al., 16 Tex. Civ.App. 163, 40 S.W. 824, 826, the court says: "There was no error in the court's holding that the property in controversy was the homestead of Henry Lipp and his children. When a man, from sickness, leaves his home and goes to the house of a neighbor to be cared for, and dies there, his little daughter, from necessity, leaves the parental roof to earn by her own hands a living, and his little son is sent for shelter to the home of a relative, the homestead is not abandoned, and cannot, in Texas, be taken from the children. There is no error, as to appellants, in the judgment, and it is affirmed."

See, also, Gulf Production Co. et al. v. Continental Oil Co. et al., Tex.Sup., 132 S.W.2d 553, by Chief Justice Cureton; Cooper v. Basham et al., Tex.Sup., 19 S.W. 704; Blaylock et al. v. Slocomb, Tex.Civ. App., 250 S.W. 218; Lewis et al. v. Pitts et al., Tex.Civ.App., 275 S.W. 473; Federal Petroleum Company v. Pittman, Tex. Civ.App., 65 S.W.2d 359; Houston Chronicle Publishing Co. v. Allen, Tex. Civ.App., 70 S.W.2d 482.

The court in his filed findings of fact found that the deceased was a victim of tuberculosis and from the time of the judgment in Cause No. 1617 was physically unable to use the property personally as a place of business but during all that time his hope and intention was when and if he regained his health to use the property as a business homestead in some line of business; that he acquired no other place, took up no other occupation except to engage in the real estate and storage business in the building for a while, after which the place was rented up to his death and, in effect, that there was no abandonment of the homestead.

Under this record and the authorities we do not feel warranted in holding that the decision of the court was without support in the testimony. The judgment is therefore affirmed.