ANDREW WARD ET AL. v. J. V. HINKLE ET AL.

No. 4017.   Decided June 25, 1928.
(8 S. W., 2d Series, 641.)

*Warren & Conn,* for plaintiffs in error.

The Probate Court of Brazoria County, had no jurisdiction over the homestead of Ben and Louisa Ward, on their respective deaths, an unmarried daughter remaining thereon. The title to the property descended to their heirs free of debts, and a sale thereof by said court to pay general creditors conferred no title. Zwernemann v. Von Rosenberg, 76 Texas, 522; Childress v. Henderson, 76 Texas, 665; Reed v. Talley, 13 T. C. A., 290, 35 S. W., 807; R. S. of 1895, Art. 2062; Eubank v. Landram, 59 Texas, 247; Stromeyer v. Napp, 75 Texas, 247; Hall v. Fields, 81 Texas, 553; Sossaman v. Powell, 21 Texas, 664; Lacey v. Lockett, 82 Texas, 190; Anderson v. McGee, 130 S. W., 1040; Ross v. Martin, 128 S. W., 718; Dorman v. Grace, 122 S. W., 401; Davie v. Green, 132 S. W., 874;

Dignowity v. Baumblatt, 38 T. C. A., 363, 85 S. W., 834; Wade v. Scott, 145 S. W., 675; Vernon's Sayles, R. S. A., 3413.

The children of two of the nine heirs and devisees of Ben and Louisa Ward not being parties to the partition suit of Hinkle v. Ward, et al., No. 10,703, District Court, Brazoria County, Texas, the judgment of partition therein rendered is not binding on any party thereto, and on direct attack for that reason will be set aside. McKinney v. Moore, 73 Texas, 470; Black v. Black, 95 Texas, 629; McDade v. Vogel, 173 S. W., 507; Perkins v. Perkins, 166 S. W., 915; Willis v. Robinson, 6 T. C. A., 70, 23 S. W., 822; Cruger v. McCracken, 87 Texas, 585; Schneider v. Sellers, 25 T. C. A., 226, 61 S. W., 541; Graham v. East Texas, etc., 50 S. W., 579; Lane v. Moon, 46 T. C. A., 625, 103 S. W., 211; Hollaway v. McIlhenny, 77 Texas, 659; Davis v. Agnew, 67 Texas, 206; Arnold v. Cauble, 49 Texas, 527; Chance v. Gregg, 88 Texas, 558, 32 S. W., 522; Maverick v. Burney, 88 Texas, 561; Ship Channel v. Bruly, 45 Texas, 6; Reed v. Talley, 13 T. C. A., 290, 35 S. W., 807; R. S. of 1895, Art. 2062; Eubank v. Landram, 59 Texas, 247; Zapp v. Strohmeyer, 75 Texas, 639; Hall v. Fields, 81 Texas, 553; Sossaman v. Powell, 21 Texas, 664; Lacey v. Lockett, 82 Texas, 190.

The suit is a direct attack on the judgment in partition to set it aside on equitable and legal grounds and to recover the land and the judgment on the undisputed evidence should have been for plaintiffs.

*A. E. Masterson* and *Burgess, Owsley, Storey & Stewart,* for defendants in error.

County courts, in all matters relating to the administration of estates of deceased persons and minors under the present constitution, are courts of general jurisdiction as to all matters within the scope of the powers conferred upon them. Guilford v. Love, 49 Texas, 715; Weems v. Masterson, 80 Texas, 52; Crawford v. McDonald, 88 Texas, 626.

It is the well established general rule that when a domestic judgment of a court of superior and general jurisdiction, acting within the scope of that jurisdiction, is assailed collaterally, every presumption is made in favor not only of the proceedings, but of the court's jurisdiction, both as regards the subject matter and the parties. Martin v. Burns, 80 Texas, 676; Iams v. Root, 55 S. W., 411.

All presumptions will be indulged in favor of the jurisdiction of county courts when exercised over a subject matter confided to them by law that would be in favor of the jurisdiction of any other court

of general jurisdiction. Their judgments and decrees cannot be collaterally attacked unless the record shows affirmatively the want of jurisdiction. In the absence of such a showing it must be presumed that the jurisdiction exercised in the given case was the exercise of lawful power. Weems v. Masterson, supra.

Applying these principals to the question in the case at bar, we think it clear that under them the decrees of the County Court of Brazoria County were not subject to collateral attack. The power to determine what property constituted the homestead of Louisa Ward and to set it aside was vested by the Constitution and statutes in the probate court; the power to determine what property should be sold for the payment of debts of Louisa Ward was vested by the Constitution and statutes in the probate court. The fact that the probate court did or may have erred in determining what property should be set aside as homestead and what property should be sold was not a matter of review before the District Court in the trial of this case. Buchanan v. Bilger, 64 Texas, 590; Cameron v. Morris, 83 Texas, 16; Goforth's Lessee v. Longworth, 4 Ohio, 129; Grignon's Lessee v. Astor, 2 Howard, 319; McGowan v. Zimpleman, 53 Texas, 481; Ross v. Martin, 128 S. W., 719; Sabrinos v. Chamberlain, 76 Texas, 626; Withers v. Patterson, 27 Texas, 494; Yarboro v. Brewster, 38 Texas, 398; Zwernemann v. Von Rosenberg, 76 Texas, 522.

The uncontroverted evidence shows that the appellee Hinkle acquired title to one-half interest in the one hundred acre tract by reason of his purchase from J. G. Smith, who purchased the property from the Administrator of the Estate of Louisa Ward, deceased. That at the time of the death of Louisa Ward, Martha Ward, who claimed to be an unmarried daughter, was not a constituent member of the family residing upon the land, but was the head of a family residing upon twelve acres of the land, which was set apart to her. That appellee Hinkle purchased the Louisa Ward interest from J. G. Smith for a valuable consideration and without notice of any claims of appellants. That appellee Hinkle brought suit in the District Court of Brazoria County, Texas, for partition of the one hundred acres and made all of the appellants, except the heirs of Neeley Williams and Amanda Lee, parties to the suit. That judgment was rendered in said partition suit partitioning the property; no objection being filed to the report of the commissioners and each party taking the land awarded to them in said partition proceedings. Said judgment was rendered on the 19th day of February,

1916. This suit was commenced as claimed by appellees on November 21st, 1921, without any excuse for not having been brought earlier and is therefore barred by the four years statute of limitation. The Court could have rendered no other judgment than a judgment for appellees and same should be affirmed. Givens v. Hudson, 64 S. W., 471; Quintana v. Giraud, 209 S. W., 770; Roco v. Green, 50 Texas, 483; Huffman v. Newhaus, 30 Texas, 633; Lacy v. Lockett, 82 Texas, 190; Burns v. Jones, 37 Texas, 50; Wilkins v. Briggs, 107 S. W., 138; Childers v. Henderson & Co., 76 Texas, 664; Stephenson v. Marsalis, 33 S. W., 383; American Bonding Co. v. Logan, 106 Texas, 306.

On the question of limitation. Warren v. Faust, 81 S. W., 232; Hamilton v. Blackburn, 95 S. W., 1094; McLain v. Stith, 112 S. W., 355; Wolfe v. Sahn, 120 S. W., 1114 and 121 S. W., 561; Rutherford v. Carr, 84 S. W., 660.

On the question of innocent purchaser. Grover v. Coit, 81 S. W., 136; Kempner v. Beaumont Lumber Co., 49 S. W., 412 and 65 Texas, 703.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

### STATEMENT OF THE CASE.

The property in controversy in this suit, 100 acres of land located in Brazoria County, was the homestead of Ben Ward and his wife, Louisa, negroes, and was occupied as such by them from about 1876 until their respective deaths. The suit was brought by the surviving children of Ben and Louisa Ward and by the children of two of their deceased daughters.

Ben Ward died in 1892 intestate, and no administration was had on his estate. After his death, his wife, Louisa, continued to reside on the old homestead with her children, who remained with her, including an unmarried daughter, until her death. When Louisa died there were still living seven children of herself and Ben Ward, and a number of children of Amanda Lee and Neeley Williams, two of the original Ward children, who had married, had families, and died. These grandchildren were many in number, the names of whom appear in the petition, but it is unnecessary to here set them out in this opinion.

The Constitution and laws of this State, from the time Ben Ward first bought 50 acres of land on February 14, 1876, to his death, and to the death of Louisa, had declared in plain language that the home-

stead could not be subject to the payment of ordinary debts, and that upon the death of Ben Ward the homestead should pass to his wife, and upon her death to their children, free from claims of ordinary creditors. They likewise provided that if an unmarried daughter survived, the homestead could not be partitioned so long as she elected to occupy it. Constitution, Sec. 16, Arts. 50, 52; R. S., Arts. 3485, 3488, 3494, 3496, 3499; Cline v. Niblo, this day decided, but not yet reported. [Ante, p. 474, 8 S. W., 2d Series, 633.]

Notwithstanding the constitutional and statutory inhibitions, the homestead of these two old negroes has been subjected to the payment of an ordinary justice court judgment, the children deprived of one-half of it, and the land subjected to partition. Everything which the Constitution and statutes have declared should not be done has been done, and the real inquiry is whether or not this has all been accomplished in such a manner as is consistent with the rules of law; or if not, whether the parties plaintiff are in position to legally complain.

It is apparent from the undisputed evidence that during the lifetime of Ben and Louisa segregated places on the 100 acre homestead were assigned to each of the four boys: Andrew, Tom, Anthony, and Christopher; that they each went into possession of the tracts respectively assigned them, fenced the same, built their houses thereon, improved, cultivated, and enjoyed the same for periods of time running as far back as twenty-five years before the death of Louisa Ward. The improvements were real, substantial, and, considering the station in life of their occupants, valuable.

Louisa Ward made a will, a part of the record in this case, as well as of the original probate proceedings. This will reads as follows:

"THE STATE OF TEXAS⎱ *In the Name of God Amen.*
COUNTY OF BRAZORIA.⎰

"KNOW YE that this is my last will and testament, I Louisa Ward being of sound mind do this the 24 day of Jan. 1907, make a division of *my homestead* between my several children, to-wit: I bequeath to Martha Ward my house and Twelve acres of land, the same to be taken out of the part on which my house stands, together with the house. I bequeath and give my Daughter Francis Gee, 11 Eleven acres of land out of *my homestead* of one hundred acres. I also will and bequeath to my son Tom Ward 11 Eleven acres of land the same to be taken off where his house now stands. I will and bequeath to my son Andrew 11 Eleven acres of land to

be taken where his house now stands. I also will and bequeath to my Son Anthony 11 Eleven acres of land to be taken off of the track where his house site is located,

"And to my daughter Rhoda Lee I will and bequeath to her 11 Eleven acres of land out of *my homestead*. And to my daughter Amanda's children I will and bequeath to them 11 Eleven acres of land out of *my homestead*. I also will and bequeath to the children of my Daughter Nelia 11 Eleven acres of land out of *my homestead*.

"I also will and bequeath to my son Christopher Ward 11 Eleven acres to be located where his house set.

"In testimony whereof I hereunto sign my name in the presents of the following witness:

her<br>
"Louisa   X   Ward.<br>
mark.

His<br>
"Witness:   Ben   X   Lee<br>
            Mark.<br>
            His<br>
     "Ed   X   Bess.<br>
            Mark.<br>
     Alex Lee."   *(Italics ours.)*

It is, we think, a reasonable conclusion, considering the facts testified to by the witnesses, that the real purpose of this will was to secure to Andrew Ward and his brothers the lands previously given them during the lifetime of their father, and on which they had settled, made improvements, and raised their families; or, as one of them testified, on which their father had "sot them"; and to give to the old unmarried daughter, Martha, and the children of the two deceased daughters, land substantially the same in amount as had been previously given to the four boys.

This, then, was the status of the estate when Louisa died: Segregated tracts of land out of the 100 acres had been assigned to each of the four boys, whereon they had built their homes and reared their families. Two of the girls were dead, leaving surviving them many children,—one daughter, Francis Gee, married and living on an adjoining tract of land with her husband, Rhoda Lee, a married daughter, not living on the place, and an unmarried daughter, Martha, more than 60 years old, living on the old homestead, where she had lived all the days of her life. When Louisa, the mother, died, there was a small justice court judgment in the

amount of $110 against her. The Ward heirs did not willingly produce the will for probate, but counsel for the judgment creditor caused some of them to be cited and required them to produce the will for probate, and he filed the application for probate of the will. The will was probated, or rather an administration was granted with the will annexed. The justice court judgment was filed as a claim with the administrator, approved by him, and the old homestead ordered sold for its payment. There was not any contention, and there is no contention here, that this justice court judgment was within any of the exceptions to the homestead exemption. In fact, counsel who brought about the probate of the will and the administration of the estate in his testimony said: "I will say this, if I had known there was any constituent member of Louisa Ward's family who claimed that as a homestead, I would not have applied." The land was sold under the order of the probate court, and bought by John G. Smith on June 7, 1911. Deed was executed August 11, 1911. On November 1, 1912, Smith deeded the land to Hinkle, the defendant in error in this proceeding. The order of sale of the probate court is not copied in the record, but reference is made to it in the deed from the administrator to Smith. This deed refers to the order of sale and the report of sale. It describes the land as being the same land as that described "in said orders and decrees and more fully described as follows, to-wit: An undivided one-half of one hundred acres (.100) of land in the John McCloskey League, between the San Bernard River and Cedar Lake, in Brazoria County, Texas, with the improvements thereon, and being the 100 acres owned by Ben Ward, deceased, and Louisa Ward, deceased, as community property, and which constituted the homestead of said Ben Ward and said Louisa Ward for a number of years." It will be noted that the property is described in this deed, and apparently in the orders of the probate court forming the basis of the deed, as land *"which constituted the homestead of said Ben Ward and said Louisa Ward for a number of years."* This description is consistent with the express declarations shown in the will which we have copied, that this land was the homestead of Louisa Ward at that very time. This same deed, in continuing the description, after having referred to the deed records, contains this language: "meaning and intending, however, the one hundred (100) acres of land in said John McCloskey League in said Brazoria County, Texas, claimed by said Ben Ward and Louisa Ward as their homestead, and which was cultivated and used by them as their homestead for a

number of years, whether described in the above mentioned instruments or in other instruments." It is to be observed that for the purpose of identifying the land conveyed with absolute certainty the subsequent clause just quoted expressly states that the land was that *"claimed by Ben Ward and Louisa Ward as their homestead."* The deed then expressly declares, as a further means of identification on the ground, that it was the land *"which was cultivated and used by them as their homestead for a number of years."* In the deed from Smith to Hinkle the land is described in exactly the same language as was used in the deed from the administrator to Smith, including the exact language which we have just quoted. In the vendor's lien notes executed by Hinkle to Smith in part payment for the land, the land is described in a similar way.

On August 5, 1913, J. V. Hinkle filed suit in the District Court of Brazoria County against Anthony Ward and others, for partition of the 100 acres of land involved, setting up his title to a half interest therein through the probate proceedings which we have just described, and that the defendants therein named were all the heirs at law of an inherited one-half interest of the property from Ben Ward, deceased. In other words, the land attempted to be conveyed by the probate court through the deeds which we have described was the one-half community interest of Louisa Ward. The land was described in part in his petition as 50 acres out of 100 acres "which was claimed, used and cultivated by said Ben Ward and Louisa Ward *as their homestead for many years."* Those named as the defendants in the partition suit brought by Hinkle were seven of the children of Louisa and Ben Ward and their wives. The children of Amanda Lee and Neeley Williams, the deceased daughters of Ben and Louisa Ward, were not made parties in the suit. These children were apparently, according to the petition filed in the instant case, fifteen or more in number. Tom and Cora Ward were cited by publication in this suit, and an attorney ad litem was appointed to represent them and file an answer in their behalf. The case was tried without the presence of any of the defendants, and judgment rendered for the partition of the property, and it was partitioned, one-half being allotted to Mr. Hinkle, and the remainder to the seven Ward heirs who had been sued. After the partition, some attempt was made to put Hinkle in possession, but apparently the darkies, who had lived on the place all their lives, some of them occupying segregated portions previously referred to, paid no attention to Hinkle or the officers who were trying to put him in possession, and ignored the court processes invoked against them. Some

time after the judgment of partition, but before the right was barred by limitation, the seven living Ward heirs, including married women properly joined by their husbands, together with the many children of Neeley Williams and Amanda Lee, the deceased daughters of Louisa and Ben Ward, filed the suit which is now before the Court. This suit is one making a direct attack upon the judgment in the partition suit, with prayer for its vacation and annulment, and for the annulment of the deed made under the orders of the probate court, and deed of Smith to Hinkle, and of course for the recovery of the property. The prayer is for a cancellation and setting aside of the pretended partition proceedings, including the judgment of partition, and for confirmation of the title in the plaintiffs. In their petition the plaintiffs in error set forth the facts as to the homestead character of the 100 acres of land and its inheritance by them and its consequent exemption from the debts of Ben Ward or Louisa Ward. They claimed that they inherited one-half of the land when their father died, and the remaining half at the death of their mother, and stated that they were at the time of their mother's death, and prior thereto, making their homes upon said tract of land. They alleged that the homestead descended and vested in them free of all debts, and that it was not subject here to partition because of the survival of a constituent member of the family of Ben and Louisa Ward,—namely, Martha Ward, an unmarried daughter, residing on the old homestead. They stated that the 100 acres of land was not subject to administration, and that the probate of the will had no other effect than to become a muniment of title to the plaintiffs of the land. They alleged that the administration, and the deeds which we have described growing out of the same, were null and void, in that the court had no jurisdiction over the property in controversy, and that the sale of the land was contrary to the Constitution and laws of the State, and that Hinkle in fact acquired no right, title, or interest in the 100 acres of land. They set up the fact that the partition suit did not make all the interested parties parties defendant; that in fact there were nine children who survived Ben Ward, the deceased, and that upon the death of Louisa Ward seven survived, and that Amanda Lee and Neeley Williams, two of the children, had died intestate prior to the death of Louisa. They alleged that neither the heirs of Amanda Lee nor the heirs of Neeley Williams were parties to the partition suit instituted by J. V. Hinkle, though the interest of these heirs appeared upon the record in court, in that the title or right of Hinkle was acquired, if any, in the proceedings of the county court of Brazoria

County, where the will of Louisa Ward was probated, and which will in itself named, as devisees, among others, the children of' Amanda Lee and the children of Neeley Williams, her deceased. daughters. The plaintiffs alleged that the partition suit, and all proceedings therein, and the judgment of partition, were void.

The plaintiffs filed a supplemental petition in response to the answer of the defendant Hinkle, and alleged that on the institution of the partition suit of Hinkle v. Ward, Tom Ward, one of the plaintiffs in the present action, was the owner of an undivided one-ninth interest in the land; that he was a married man, had his home on this land, and that the land was the homestead of himself and wife, but they were temporarily absent therefrom, leaving their home in charge of their son Monroe; that the defendant Hinkle was well acquainted with Tom Ward and his wife, Cora, and could have learned their whereabouts if he had used reasonable diligence to ascertain them, but that instead of doing this he cited them by publication, caused the court to assign an attorney ad litem to represent them; that the attorney ad litem undertook to file for them and some other defendants in the partition suit a formal answer, "and thereafter, without the knowledge or consent of said Tom Ward or Cora Ward, agreed with the plaintiff J. B. Hinkle and his attorney that the land in controversy was subject to a partition in kind, and also agreed that the same might be partitioned, and that the said plaintiff Hinkle had a good title to an undivided one-half interest in and to the entire 100 acres of land." The plaintiffs allege that after the institution of the partition suit by Hinkle they employed an attorney to make defense to the suit of Hinkle v. Ward, and that this attorney told them that he would notify them when the case was to be tried, so they could be present and testify as to the facts constituting their defense. The plaintiffs allege that said attorney never at any time notified them that the case was set for trial, or that it would be tried, nor at any time requested plaintiffs to come forward and present their defense as they have alleged it in this case, but after said employment, "without any authority from the plaintiffs, entered into an agreement with the defendant J. V. Hinkle and his attorney, agreeing that said land was subject to partition in kind, and that the said J. V. Hinkle had a good title to an undivided one-half interest in said land, when said attorney and said Hinkle and his attorney knew, or ought to have known, that such agreement was inequitable, unfair, unjust, and untrue." They likewise alleged that the decree entered in the case was an agreed decree, entered into by the parties, and that their said attorney knew, or ought to have known, that the

land was not subject to partition in kind, and that the plaintiff in the partition suit had no title to any part of it. They alleged that at the very time of such agreement by their attorney the land was being occupied and used by the plaintiffs as their homestead, and that such agreement was made without their consent or the consent of their wives. The plaintiffs allege that they were "ignorant colored people, living in a remote part of Brazoria County, where they have lived all their lives, and are illiterate and unfamiliar with court procedure, and relied upon their attorney to present their defense in said partition suit and notify them at the time it was to be tried, so that they might present their defense as same is alleged in this case." They further alleged in a supplemental pleading that the land when partitioned in that suit was partitioned in such a way as to set aside to Hinkle the homesteads of Tom Ward, Andrew Ward, and Christopher Ward. The plaintiffs allege that they knew nothing about the rendition of this decree of partition until after the adjournment of the term at which it was rendered, and not until after a writ of possession was issued to oust Christopher Ward, Andrew Ward, and Tom Ward from their homesteads.

On the trial of the case in the District Court, that court denied all relief to the Ward heirs, and they appealed the case to the Court of Civil Appeals. The Court of Civil Appeals held that the judgment of partition was valid and res adjudicata as to the cited parties to that suit, and affirmed it in so far as it affected the seven children of Ben and Louisa Ward, who were parties, but reversed so much of the judgment as denied to the heirs of the other two children a recovery of their interest in the 100 acres, and remanded the cause with instructions to render judgment fixing the interest of the defendant in error Hinkle in one-half of seven-ninths of the 100 acres, and fixing the interest of the seven children of Ben and Louisa Ward, who were parties to the suit, at a seven-eighteenths part, and to decree a recovery of their interest in the 100 acres to the heirs of the other two children who were not parties to that suit, and proceed with the partition of the property as provided by law, subject to instructions. 252 S. W., 236. The Ward heirs brought the case to this Court by writ of error.

OPINION.

When Ben Ward died, the children of his marriage inherited his half interest in the community homestead, subject, however, to the right of the surviving wife, Louisa, to occupy the same so long as she lived or desired to live there. Upon the death of Louisa, her

half of the community homestead passed to her heirs, free of all claims of general creditors, such as that for which it was sold; subject, however, to the right of occupancy of Martha, an aged unmarried daughter, who lived with her as a surviving constituent member of her family.

The homestead estate was not subject to administration, and all the orders of the probate court administering on it and directing its sale for the payment of the justice court judgment in this case were, and are, absolutely void. Cline v. Niblo, this day decided, but not yet reported, and authorities there cited. [8 S. W., 2d Series, 633.]

The fact that the property was homestead, and the claim for the payment of which it was sold was a mere general claim, not within any of the exceptions for which homestead property could be sold, and that heirs survived, appeared on the face of the probate record. Therefore no question of an innocent purchaser arises in this case. Since the order directing the sale was void, the vendee took no title, nor did the subsequent vendee, the defendant in error in this case. Cline v. Niblo, supra, and authorities there cited.

The instant case is a suit making a direct attack on the partition suit, and we are of the opinion the court should have set aside the partition decree. The children of the two deceased girls, Amanda and Neeley, some fifteen or more in number, heirs to two-ninths of the property under the law, were not made parties to that suit, although the will of Louisa Ward, a part of the probate proceedings, showed the existence of such heirs. There could be no valid partition in the absence of all necessary parties, and when these facts were shown, the partition decree should have been set aside. R. S., Arts. 6083, 6086, 6087, 6094, 6095; Holloway v. McIlhenny Co., 77 Texas, 657, 14 S. W., 240; Maverick v. Burney, 88 Texas, 560, 32 S. W., 512; Boone v. Knox, 80 Texas, 642, 26 Am. St., 767, 16 S. W., 448; McKinney v. Moore, 73 Texas, 470, 11 S. W., 493; Oliver v. Robertson, 41 Texas, 422; Buffalo Bayou Ship Channel Co. v. Bruly, 45 Texas, 6; Johns v. Northcutt, 49 Texas, 444; Arnold v. Cauble, 49 Texas, 527; DeLaVega v. League, 64 Texas, 205; Vineyard v. Heard, 167 S. W., 22; Keith v. Keith, 87 S. W., 384.

In the case of Holloway v. McIlhenny the suit was one in trespass to try title and for partition. This Court reversed the judgment, saying in part:

"The judgment is erroneous and must be reversed. The undisputed testimony adduced upon the trial showed that there were

descendants of Mrs. Holloway who were entitled to interests in the land and who were still living that were not made parties to the suit. That all tenants in common are indispensable parties to a suit for partition is well settled in this court. Ship Channel Co. v. Bruly, 45 Texas, 6; McKinney v. Moore, 73 Texas, 470; Parker v. Chancellor, 73 Texas, 475."

In the case of Maverick v. Burney, cited above, this court re-affirmed the rule just quoted, saying:

"It is well settled in this court, that whenever in course of a partition suit it is disclosed that all who have an interest in the property to be divided are not parties, it is the duty of the court to arrest the proceedings until they are made parties, and this should be done at any stage of the case. Ship Channel Co. v. Bruly, 45 Texas, 6; Parker v. Chancellor, 73 Texas, 479; Holloway v. McIlhenny, 77 Texas, 659."

The case of McKinney v. Moore, supra, makes a similar holding when this Court declared:

"After the cause was dismissed against A. Cartwright the suit for partition could not be maintained because he was an admitted tenant in common with the other parties. Ship Channel Co. v. Bruly, 45 Texas, 6."

It is unnecessary to discuss the subject further. It was the duty of the trial court to have set aside the partition decree for lack of necessary parties.

We will not note the other specific grounds also pleaded for setting aside the partition judgment, since the above suffices, except to say that under all the facts the decree should have been vacated; and since defendant in error Hinkle was without title to any part of the property, recovery should have been denied him, and judgment should have been entered in favor of plaintiffs in error in accordance with the prayer of their petition, for the recovery of the whole of the property sued for, and for cancellation and annulment as therein prayed, and enjoining the defendant in error from going in or upon the land and interfering with the possession of plaintiffs in error.

The judgments of the trial court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiffs in error.

*Reversed and rendered.*