ACCEPTED
12-14-00250-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
1/28/2015 4:00:07 PM
CATHY LUSK
CLERK

NO. 12-14-00250-CV

_____

IN THE COURT OF APPEALS
TWELFTH APPELLATE DISTRICT OF TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
1/28/2015 4:00:07 PM
CATHY S. LUSK
Clerk

_____

LARRY T. LONG AND WOODBINE PRODUCTION CORPORATION

Appellants,

v.

MIKEN OIL, INC. and MIKE TATE

Appellees.

_____

## REPLY BRIEF OF APPELLANTS, LARRY T. LONG AND WOODBINE PRODUCTION CORPORATION

TO THE HONORABLE COURT OF APPEALS:

LARRY T. LONG (hereinafter individually "Larry Long") and WOODBINE PRODUCTION CORPORATION (hereinafter individually "Woodbine") (collectively referred to as "Long") file this their Reply Brief of Appellants, and would respectfully show unto the Court, as follows:

### I. INTRODUCTION

On January 13, 2015, Miken Oil, Inc. and Mike Tate ("Appellees") filed their Brief of Appellees Miken Oil, Inc. and Mike Tate with this Court. Several

statements and conclusions set forth in that Brief of Appellees are the subject of this Reply Brief, in that such statements and conclusions are either incorrect and/or misleading.

## II. ALL COTENANTS OF THE POSSESSOEY
## MINERAL ESTATE MUST BE JOINED

Throughout the Brief of Appellees, and especially in Reply to Issue No. 1 (pp. 19-29), Appellees contend that a court may partition less than the whole of a possessory estate in real property (such as partitioning a 7/8ths working interest in the mineral leasehold estate of two tracts, which Appellees have purportedly sought to partition in this action). No statute or case authority is cited by Appellees to support such argument (Brief of Appellees, p. 22). Instead, Appellees quickly change the argument to a question of whether the district court had <u>jurisdiction</u> over the partition action, absent joinder of all of the cotenants. That argument is sufficiently addressed in the Brief of Appellant and Appellees' response is also addressed below. In other words, Appellees evaded addressing the key issue in this appeal.

In arguing this "less than whole partition" contention, Appellees resort to making a distinction without a material difference to this case. Appellees argue that *Carper v. Halamicek,* 610 S.W.2d 556, 558 (Tex. Civ. App.--Tyler 1980, writ ref'd n.r.e.) refers to partitioning <u>tracts of land</u>, and this case is distinguishable because it addresses an "oil and gas interest." (Brief of Appellees, p. 23) Basic law on real

property establishes that a mineral leasehold interest (*i.e.* the subject of partition in our case) is a fee simple determinable mineral estate of a tract or tracts of land and that lessees holding under oil and gas leases covering the entire 8/8ths of the mineral estate of the tract of land are the "cotenants," inasmuch as each holds an immediate right to possession to every part of the mineral leasehold estate. *Texas Oil & Gas Corp. v. Ostrom,* 638 S.W.2d 231 (Tex.App.—Tyler 1982, writ ref'd n.r.e.).

## A.  APPELLEES' "RED HERRING" CONSTRUCTION OF OSTROM

Appellees do not acknowledge the authority of *Ostrom, id.* on the above subject, but evasively contend that *Ostrom, id.* is their authority that only the persons who own interests in the "specific property interest which a plaintiff <u>seeks to partition</u>" in a partition action need be joined. In making such argument, Appellees have taken this Court's language in *Ostrom, supra* totally out of context. This Court particularly held as follows:

> Appellee L. E. Ostrom (Ostrom) sued appellant Texas Oil & Gas Corp. (TXO) **for a partition of the mineral leasehold estate in 258.34 acres of land in Rusk County**. <u>Ostrom alleged that he owned an undivided working interest in the mineral rights in, upon, and under 139.63 acres of this tract, and that TXO owned the same type of interest in the remaining 118.71 acres</u>. **Ostrom pleaded that he and TXO were the sole owners of the possessory rights in the minerals in this tract**, and prayed that the court appoint Commissioners to make a partition in kind of the mineral leasehold estate.
>
> . . . .

Appellant's first point of error is that the trial court erred in overruling appellant's plea in abatement **because the mineral owners and lessors of the oil, gas, and mineral leases were not joined and were "necessary" parties**. Appellant's position is that a partition of the leasehold estate involving only the oil, gas, and mineral leasehold estate owners will impair the lessor's ability to protect his royalty interest and will leave either or both of the leasehold estate owners subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations under the oil and gas leases. **We overrule appellant's first point of error**.

. . . .

Article 6082, Tex. Rev. Civ. Stat. Ann. (Vernon 1970) [now codified and modified in TEX. PROP. CODE 23.001] provides:

> Any joint owner or claimant of any real estate or of any interest therein or of any mineral, coal, petroleum, or gas lands, whether held in fee or by lease or otherwise, may compel a partition thereof between the other joint owners or claimants thereof in the manner provided in this chapter.

. . . .

*[The following language in bold is the language in Ostrom, supra which is quoted out of context in the Brief of Appellees]*

**The general rule in a partition case is that all owners of property must be joined. Ward v. Hinkle, 117 Tex. 566, 8 S.W.2d 641, 645 (1928); Carper v. Halamicek, supra; Clegg v. Clark, 405 S.W.2d 697, 698 (Tex. Civ. App. -- Waco 1966, writ ref'd). Implicit in this rule is that the owners who must be joined are the owners of the property sought to be partitioned.** 2 The property sought to be partitioned in the case at bar is the leasehold estate in the oil, gas and other minerals. Thus, we must decide who are the owners of the leasehold estate in the oil, gas, and other minerals, and hence, who must be joined.

FOOTNOTES

2 Rule 756(a) and art. 6083, Tex. Rev. Civ. Stat. Ann. (Vernon 1970) provide, inter alia, that in a partition action the plaintiff's petition shall state the "names and residence, if known, of <u>each of the other joint owners, or joint claimants, of such property</u>."

In Texas Co. v. Cain, 177 S.W.2d 251, 253 (Tex. Civ. App. -- Texarkana 1944, writ ref'd w.o.m.), **a case concerning an oil and gas leasehold estate partition**, the court, quoting from Henderson v. Chesley, 273 S.W. 299, 304 (Tex. Civ. App. -- 1925) aff'd per curiam, 292 S.W. 156 (1927) said:

> It is clear to our minds that the Legislature intended to use "**joint owner**" in its broadest sense. In that sense he is not necessarily one owning the fee simple, or one having in the property the highest estate it will admit of, **but is one who owns any interest in real estate entitling him to joint possession and use**. (Emphasis added.)

The lessor of a mineral estate retains a nonpossessory reversionary interest in the minerals, which is a possibility of reverter. 42 Tex. Jur. 2d Oil and Gas §§ 176, 177 (1963). . . . Lessors of a mineral estate and royalty interest owners, therefore, are not "joint owners" of the mineral leasehold estate for the purposes of art. 6082, the partition statute.

The purpose and effect of a partition of an estate in real property is to sever the right of immediate possession of the whole of the possessory estate in the tract, such that each cotenant is vested with the <u>exclusive</u> immediate right of possession to a separate part of the tract, free from the rights of the other cotenants to possess such severed part. TEX. PROP. CODE 23.004(a) provides as follows:

§23.004. Effect of Partition

(a) A person allotted a share of or an interest in real property in a partition action holds the property or interest <u>in severalty</u> under the conditions and covenants that applied to the property prior to the

partition.

The term "severalty" is defined in Webster's New Universal Unabridged Dictionary (2d Ed) as "Law. a. (of an estate, esp. land) the condition of being held or owned by separate and individual right. b. an estate held or owned by individual right."

With that said, the very nature of a partition action requires the joinder of all cotenants; at least that is what this Court held in *Carper v. Halamicek,* 610 S.W.2d 556, 558 (Tex. Civ. App.--Tyler 1980, writ ref'd n.r.e.).

### B. TEXAS PRECEDENT REQUIRES ALL COTENANTS OF THE POSSESSORY ESTATE IN THE REAL PROPERTY TO BE JOINED IN A PARTITION ACTION

As set forth in the Brief of Appellants, numerous opinions of Texas courts have addressed this issue and all have concluded that all cotenants of possessory interests in real property must be made parties, not a select few of the cotenants, and only then, if selected by the plaintiff seeking partition.

In *Ward v. Hinkle,* 8 S.W.2d 641 (Tex. 1928), the Supreme Court held "[t]hat all tenants in common are indispensable parties to a suit for partition is well settled in this court. . . ".

In *Maxwell's Unknown Heirs v. Bolding,* 11 S.W.2d 814 (Tex.App.—1928, no writ), that court held, as follows:

> Since the cause must be reversed, we call the attention of counsel to the fact that the petition alleges **that the parties appellees and appellants only own an undivided one-half interest in one of the tracts of land sought to be partitioned**. The rule seems to be well established that, before property can be partitioned, **all of the**

**joint owners or cotenants must be made parties, either plaintiff or defendant, in order that the court ordering partition may determine the interest each party has therein and make a proper distribution of the property**. . . .

This Court in *Carper v. Halamicek,* 610 S.W.2d 556, 558 (Tex. Civ. App.--Tyler 1980, writ ref'd n.r.e.) held:

> **Due to the nature of partition actions, and in light of rule 757, it is our view that it is absolutely necessary to have all owners of real property before the court when the property is partitioned**. As observed by the court in Maxwell, supra at 815, "(j)oint owners … must be made parties … in order that the court ordering partition may determine the interest each party has therein and make a proper distribution of the property.

In *Mustang Drilling, Inc. v. Cobb,* 815 S.W.2d 774 (Tex.App.—Texarkana 1991, writ denied), that court held:

> Cobb correctly asserts that an attempted partition of the whole of a tract of land, where all the owners are not joined as parties, is not binding even on those who are parties. Ward v. Hinkle, 117 Tex. 566, 8 S.W.2d 641 (1928); . . . . This rule is grounded in statutory law and has survived the amendments of our rules of procedure regarding necessary parties.

In *Gilbreath v. Douglas,* 388 S.W.2d 279 (Tex.Civ.App.— Amarillo 1965, writ ref'd n.r.e.), that court held:

> The general rule is that partitioning may **not** be enforced as to a **portion of** the common property, and **the suit must seek a division of the whole thereof**.
>
> In *Henderson v. Chelsey,* 273 S.W. 299 (Tex.App.—1925), *aff'd*, 292 S.W.

156 (Tex. 1927), that court provided the reasoning behind the rule:

"The right of a joint owner or claimant of any estate to **compel a partition thereof between the other joint owners or claimants** 'is recognized by our statute in the broadest terms.' Article 3606, Rev. Stats. 1895; article 6096, Rev. Stats. 1911; Morris v. Morris, 45 Tex. Civ. App. 60, 99 S.W. 872."

. . . .

"'Partition' * * * means the act or proceeding through which two or more co-owners cause the thing to be partitioned to be divided into as many shares as there are owners, and **which vests in each of such persons a specific part with the right to possess it free from a like right in other persons who before partition had an equal right to possess**."

In the case of Tieman v. Baker, 63 Tex. 641, 643, the Supreme Court held:

"The very purpose of partition is to enable one, holding or entitled to hold with others an undivided possession, **to sever that possession and right, and thenceforth to hold an exclusive possession of a specific part of the property, which before partition all the co-owners had the equal right to possess**."

Texas law holds that all cotenants of a possessory estate in real property are indispensable parties in a partition action, regardless whether the issue is viewed as jurisdictional or as prudential. "Cotenants" has been defined as a "description of the relationship between estates." *In re Marriage of Thurmond,* 888 S.W.2d 269 (Tex.App.—Amarillo 1994, writ denied), where "two or more persons share the unity of exclusive use and possession of property held in common". *Laster v. First Huntsville Properties Co.,* 826 S.W.2d 125 (Tex. 1991). "Cotenants" cannot be limited in partition to include only a fractional part of those persons who share the

unity of exclusive use and possession of the possessory estate, because, by definition, "cotenants" includes all persons who have a present right to possession of the property.

In *Burkitt v. Broyles,* 317 S.W.2d 762 (Tex.App.—Houston 1958, writ ref'd n.r.e.), that court held:

> The law is well settled that before property can be partitioned, all of the joint owners or co-tenants must be made parties to the proceeding. . . . All owners of the property entitled to possession or having a possessory interest in the land are necessary parties to a partition of land.

### C. IS THE ISSUE OF INDISPENSABLE PARTIES A MATTER OF A COURT'S JURISDICTION OR ITS PRUDENTIAL POWER?

Again, as to the argument that the issue of lack of indispensable parties is jurisdiction or prudential, the Brief of Appellants addresses the subject as it pertains to partition and like actions. The only opinion which Appellees cite as its authority that "the lack of necessary parties to a partition does not deprive the court of subject matter jurisdiction" (Brief of Appellees, p. 22) is *Hudson v. Sweatt,* 2014 Tex.App. LEXIS 12660 (Tex.App.—El Paso 2014, no pet.). That opinion is not authority for Appellees' proposition. While it is true that in the underlying action under its review, the plaintiff filed an action in trespass to try title to property and to partition the proceeds from a sale of the property, and that a plea in abatement was filed, stating that the district court should have abated the case because an indispensable party was not served, **Appellees fail to mention that such court**

found "**all co-owners of the property and heirs to the estate were made parties to the suit**." Also, that opinion stated that the record included an Amended Loss Return of Service Affidavit stating that service had been obtained upon the alleged indispensable party; the court's entry of judgment stated that the so-designated indispensable party had failed to appear and answer and wholly made default; and the opinion quoted the trial court's addressing the issue at trial and its holding that it was unpersuaded by the arguments that service had not been effected on the alleged indispensable party. The appellate court went on to state that "[t]he argument that this court could not proceed with[out] Jason Hudson fails for several reasons. First, <u>there was evidence from which the district court could decide that the return of citation by Mr. Clabough was credible and that Jason Hudson had indeed been served. We will not disturb that factual finding</u>." Thus, the opinion does not begin to support Appellees' proposition. The appellate court went on and held that the appellant had <u>made no showing as to why Jason Hudson was an indispensable party</u>, which is contrary to the circumstances before this court.

### III. THE PARTIES JOINED IN THIS ACTION DO NOT EVEN HOLD THE 7/8THS WORKING INTERESTS

Appellees contend "[h]ere Tate and Long were the only owners of the property to be affected, namely the 7/8ths working interests." (Brief of Appellees, p. 25) and "[t]here was never any dispute as to the ownership of the 7/8ths interest." (Brief of Appellees, p. 30) Such contentions by Appellees are not true.

One, Tate owns no working interest in the leases; he conveyed his interest to Miken in 2010. (I SCR 47) Second, the following excerpts from the Brief of Appellants show that there is a substantial disagreement on such point and in fact more than 1/8ths of the cotenants were not served or joined by Appellees:

> Plaintiffs may have concluded that such Remaining Owners only hold a 1/8th working interest, but the Remaining Owners may disagree and they are entitled to be heard in the partition action to establish their share or interest. TEX.R.CIV.P. 760. In fact, parties holding more than 1/8 of the leasehold interest were not joined.

(Brief of Appellant, p. 36)

> Appellees therein judicially admitted that parties owing a 1/8th undivided interest in both the leaseholds of the Young and Thrash Leases were not being joined in the action (the "Remaining Owners"). (1CR 7, 8, 9) Bonanza's contract of sale with Long and Tate contracted to convey a .875 working interest in each lease. (2CR 254, 260) (See also 1RR 5-7)

(Brief of Appellant, p. 8)

> Appellees made much of the difference that Long and Tate acquired their respective undivided interests in the leasehold estates by the same assignments; whereas the Remaining Owners were assignees of a prior assignor of the entire working interests. In fact, such argument is wrong. One of the Remaining Owners is the assignee of Larry Long, who was assigned part Long's leasehold interest, but he was also excluded by Appellees. (1SCR 42)

(Brief of Appellant, p. 31)

> In Long's Reply to Plaintiffs and Counter-Defendant's Brief in Support of Additional Parties Being Unnecessary Under T.R.C.P. 39(a), and by its Exhibit "A," (2CR 296, 300, 317-331), Long gave the trial court and Appellees notice of the identities of all persons then holding working (leasehold) interests in the Young and Thrash Leases

(the "Remaining Owners").

(Brief of Appellant, p. 10)

Thus, even under Appellees' theory of proper joinder of parties, the Clerk's Record establishes that not even all parties owning the 7/8ths working interests in the oil and gas leases were joined, and trial court's ordering partition is improper even under Appellees' theory of proper parties.

## IV. LONG DID NOT STIPULATE TO THE TRIAL COURT'S SUBJECT MATTER JURISDICTION OF THE PARTITION ACTION

On pp. 1-2 and 14 of Brief of Appellees, Appellees make an argument that by reason of certain allegations found in the Counterclaim of Larry Long and the Plea in Intervention of Woodbine Production Corp. (CR I 28), Long admitted that the District Court had subject matter jurisdiction over the partition action and implicitly, such judicial admission would trump Texas law. Subject matter jurisdiction of a court cannot arise by a "stipulation" to such jurisdiction, if such jurisdiction does not otherwise exist. In *Basic Energy Service, Inc. v. D-S-B Properties, Inc.,* 367 S.W.3d 254 (Tex.App.—Tyler 2011) *pet. dism'd*, *Basic Energy Servs. v. D-S-B Props.,* 2012 Tex. App. LEXIS 3881 (Tex. App. Tyler, May 16, 2012), that court held:

> While parties may stipulate to facts, neither courts nor the parties are bound by stipulations to legal conclusions to be drawn from the facts of the case. See Caprock Inv. Corp. v. F.D.I.C., 17 S.W.3d 707, 713 (Tex. App.—Eastland 2000, pet. denied); Martinez v. Hardy, 864 S.W.2d 767, 770 (Tex. App.—Houston [14th Dist.]

1993, no writ); Cartwright v. MBank Corpus Christi, N.A., 865 S.W.2d 546, 549 (Tex. App.—Corpus Christi 1993, writ denied).

The second obvious reply to such contention is that the particular allegation or stipulation <u>in Long's pleading noted above</u> (*i.e.* Long's Counterclaim and Woodbine's Plea in Intervention) reads "[t]his Court has jurisdiction and venue over the <u>subject matter and persons named herein</u>." (CR I 28) Long's Counterclaim was an action for equitable contribution against a cotenant, and Woodbine's Plea in Intervention included an action in quantum meruit and, being assignee of Long, for contribution against Appellees. Neither Long nor Woodbine pled for partition. The District Court had subject matter jurisdiction of such <u>counterclaims</u> and <u>claims in the pleas in intervention</u>, irrespective of whether it had jurisdiction over the partition action. Again, at the time, Appellees were moving the Court to strike the plea in intervention. None of the causes of action alleged in the counterclaim or plea in intervention were dependent upon the viability of a partition action. Long did not allege, admit or stipulate that the trial court had subject matter jurisdiction over the partition claims of Appellees. This should have been obvious to Appellees, in light of Longs' prior answer and Long's plea in abatement and further briefing, raising again and again, the issue of the lack of jurisdiction of the trial court to go forward on the partition action in the absence of all necessary parties.

## V. LONG DID NOT STIPULATE TO APPELLEES'
## ERRONEOUS ORDER OF PROCEEDING

In the Brief of Appellees, Appellees suggest that Long somehow stipulated and agreed that the district court should go forward with the sale of the property to be partitioned, and to delay deciding the many issues to be determined in the first judgment after the entry of the first final judgment. The Record does not support any such stipulation (III SCR 475, 476, 477). Again, such a stipulation would not be binding on the parties or the courts. *Basic Energy Service, supra.* Appellees do not quote such a stipulation in their Brief because there is none.

Rather, as noted in the Brief of Appellees, Long always expressed concern about the timing of matters and expressed the fear of the bar of res judicata, if "first judgment" matters were deferred until after the order of sale. Expressing doubts about the appropriateness of the order of matters to be taken up by the court <u>is not a stipulation</u>. The Record of the second hearing on discovery referred to in the Brief of Appellees does not show any stipulation:

> MR. ADKISON: Your Honor, the stipulation that we made is clear, and I don't believe that I've used the word lien. But in the statute itself, which we cite in our response, it's clear that -- and it is the language that the Court used in making its decision that forces us to be cautious is, at the first hearing on the matter, it's the duty of the Court to determine the claims -- shared claims of each of the joint claimants and all questions of law that equitably affect title to the land. Questions might include the right of the property to receive contributions from the others for expenses incurred in maintaining or improving the property, as well as whether or not -- or whether or not somebody is to receive a specific tract. . . . (II RR 16-17)

THE COURT: I understand what you're saying.

MR. ADKISON: Yeah.

THE COURT: All right. So then the order of the Court would be that you're not waiving any rights for contributions under the statute because you're allowing the case -- the property to be sold first without making that determination prior to the sale of the property.

MR. HONEA: Your Honor, I would say that they've had cases where in the opinions, and I'm looking at one of them out of Tyler, 1993, and they basically said it's a matter of res judicata. If these matters are not litigated in the first judgment, it's res judicata. So we need very strong language that they are waiving any claim, including res judicata, if we're going to postpone this determination of contribution. Because there are several cases here that say if you wait until that second judgment, after the sale has occurred, we've waived our claim, and we're barred by res judicata. . . . (II RR 17-18)

MR. ADKISON: I simply refuse to step into the trap. The question is not whether or not we're going to sell the leases, the question is the timing of the -- when the sale of the lease occurs. And the cases say that the sale of the leases, of which we've agreed ought to be sold, but the question is, under the cases, the timing of that has got to be after the determination of what the claims for contribution between the parties are. It's that simple. . . . (II RR 19)

MR. ADKISON: . . . The timing of it has got to be according to what the law says, and that's what the stipulation is. . . . (II RR 26)

THE COURT: All right. I'll review all of this and try to be real succinct and particular in writing up what I believe, other than what's heretofore ordered, I'll review the sell matter. (II RR 26-27)

The only statement which could be considered a stipulation or admission is

the statement:

> THE COURT: Do y'all agree that the property is not subject to being partitioned in kind?

> MR. HONEA: We agree that that is not susceptible to being partitioned in kind.

> THE COURT: Okay.

> MR. HONEA: We don't necessarily think it's ready to be partitioned though.

(RR I 11).[1] The above statement is not an agreement to take procedures out of time so as to subject Long to the res judicata bar. As noted, Long expressed concern about the timing, and it was the trial court which restated the agreement as follows:

> THE COURT: I understand. I'm just -- okay. So that's at least one step we can get to. So y'all are -- both parties are therefore in agreement that <u>at some point in time that the property will need to be sold; therefore, it just appears to me then the questions before the Court would be who owns -- number one, if all parties are necessarily joined in the lawsuit, and then the next step would be who owns what and who is owed what</u>. (I RR 11-12)

> . . . .

> THE COURT: All right. And I'm -- I may be talking on a different level than what y'all are. The issue that I'm trying to resolve is whether or not -- they are saying that all necessary parties are not joined because anyone whose ownership interest could be affected has to be joined in the lawsuit. (I RR 13)

> . . . .

---

[1] The language, including quotations, set forth in the Brief of Appellees includes citations referencing the Reporter's Record which do not appear at the locations noted in the Reporter's Record. In light of such inconsistencies, Long has quoted directly from the Reporter's Record and has included the proper citation reference to each quotation.

THE COURT:  I don't think is -- is there any  dispute in that ultimately that would be something resolved by the Court?  I don't think there's -- I mean, I understand the  law to be that, too.  I mean, y'all agree on that?  All right. My question -- and I want to make sure that we're following  along okay.  <u>Are you saying that the Court has to make that  determination before it orders a sale</u>?

MR. HONEA:  In fact, Your Honor, there's cases -- I couldn't believe them when I read them, because they distinguish between the first trial and the second trial. They had two co-tenants, and they didn't raise the issue of liens.  And one of the co-tenants had a lien, had a promissory  note and a purchase money mortgage on his interest.  And since  the Court didn't decide it in the first trial, that that lien was going to affect the property, the Court just split the property even, 50/50, between the two of them, and then there was a sale.  And then the other party said, wait a second, Your Honor, if that guy has a lien against his property for $10,000, that affects the value.  And they took it up on appeal, and the Appellate Court said, too late, res judicata.  <u>You had to raise that lien issue in the first trial</u>. . . . (I RR 15-16)

. . . .

THE COURT:  Well now, that's why I'm agreeing on what the agreement is.  I mean, I think -- <u>and y'all may not be in agreement on this</u>, so I think that the Court needs to make a determination of whether or not there needs to be any additional parties added to the lawsuit. And then number two, then the Court could order the property sold, and the Court then determines -- **and I may have this out of order** -- then determines any issues of offsets, liens, ownership, contributions, who owes -- who is owed what money. (I RR 18-19)
. . . .

THE COURT:  Well, if it's on the record, it's on the record.  All right.  Let's go through this.  The parties, that's the first dominant issue, to make sure we have all parties before the Court with affidavits filed before the Court under oath with any interest either party might have,  know of, et cetera.  The Court will rule upon necessary  parties at that time.

MR. ADKISON:  Your Honor, would the parties be  allowed to

submit a brief on these party issues?

THE COURT: Yeah. Yes, because I think that's the best -- that's the legal issue. <u>Right now, as I see it, that's the only legal issue for the Court.</u>

<u>**Then the next -- after that** -- after that's determined, then the Court then have those -- any necessary -- further necessary parties before it. The Court will determine at that -- **the next would be the ruling of the Court at this time that this Court then would take up all matters concerning these two leases and these parties, any ownership issues, any matters that were owed by either party, what's owed by any party, offsets, contributions, debts, whatever it might be through prior operations, through -- y'all understand? I don't -- maybe not know everything that would be** …</u>

MR. HONEA: Do you want interest billings?

THE COURT: Billings, whatever. And then we need to determine that. And -- but I think -- well, and I think once the Court has all of the parties before it, he can order the property be sold. And then the Court, once we get the proceeds, the Court determines how the proceeds are to be divided. Everybody agree with that?

MR. CLARK: We agree with that, Your Honor.

*[No response from Long's counsel]*

THE COURT: All right. So we determine the parties, make sure we have all parties before the Court. At that time, subject to whatever interest they might have or whatever arguments they might have, order the property sold, and then determine ownership of the property.

MR. CLARK: How soon do you want us to file our position with the Court? (I RR 21-22)

In other words, the trial court outlined of proceedings to follow in two

separate orders of proceedings; none of the discussion at the hearing can be considered a stipulation or admission on the part of Long that the court should proceed in the case out of order, and to first order the sale of the property to be partitioned, and later determine the shares each party owned in the partitioned estate, the burdens of each share, etc.

## VI. LONG DID PRESERVE ERROR IN THE TRIAL COURT'S DENIAL OF LONG'S SPECIAL EXCEPTIONS AND ORDER FOR RECEIVERSHIP

In reply to Issue No. 2, Appellees contend that Long did not preserve the issue of the court's denial of the special exceptions for review. It is clear from the record that Appellees' petition did not include the necessary allegations required to assert a partition claim on real property. TEX.R.CIV.P. 756. It is also clear that special exceptions were timely filed, and they were set for hearing. At the hearing the court took such matters under advisement.

> THE COURT: Yeah. And at that time then we'll probably set another hearing, if necessary. All right. And all -- and then -- it's the Court's position then that these other ancillary matters that have been filed today, the Court takes care of all of that with this ruling with the understanding I'll -- as far as Motions to Strike, Motions to Transfer Venue, and all of that? Y'all in agreement with that, that I'll go ahead and take care of everything? (I RR 23)

Then, out of the blue, and during the discovery of the case, the court signed an order (submitted by Appellees' counsel) (which was in effect a final judgment), without any motion, hearing, or notice on the entry of such judgment. Inasmuch as there was no notice of the court's intention to enter a judgment--the only notice

being of the court's intention to deny Longs' plea in abatement--the abrupt entry of such a judgment clearly falls within *Guerrero v. Salinas,* 2006 Tex.App. LEXIS 8562 (Tex.App.—Corpus Christi 2006, no pet.). Long did preserve their error, in that Long did object to the court in the letter to the court dated February 21, 2014, regarding the submission of the Order by Appellees, including referencing matters addressed in the special exceptions. (III SCR 475) Long also timely filed a notice of appeal, and included such error as Issue No. 2 in their Brief. TEX.R.CIV.P. 301 provides that the judgment of the court shall conform to the pleadings, and it is a proper subject for a point of error in an appeal to argue that the pleadings do not support a claim for partition. Long were not required to file a motion for new trial to preserve such issue on appeal. TEX.R.CIV.P. 324(a) and (b). Likewise, a request for findings of fact and conclusions of law would not require the trial court to address the special exceptions or the lack of proper pleadings to support an action in partition. TEX.R.CIV.P. 296.

Likewise, in reply to Issue No. 6, Appellees contend that Long did not complain of the court's error with respect to granting the receivership. Not so; see letter of February 21, 2014. (III SCR 475, 477)

### VII. LONG DID PRESERVE ERROR IN THE TRIAL COURT'S DENIAL OF A TRIAL BY JURY

In reply to Issue No. 9, Appellees contend that despite the fact that Long timely filed a request for jury trial and paid the jury fee, Long waived trial by jury

by not continuing to demand a jury trial. Appellees forget that there was no trial (bench or jury) in this action—only the court signing an order submitted by Appellees. Inasmuch as the order was entered without any motion or notice of hearing and no trial was set and during a time when the court was ruling on discovery matters, there was no basis for Long to object to the trial court's unilateral action. In *Puntarelli v. Peterson,* 405 S.W.3d 131, 134 (Tex.App.— Houston [1st Dist.] 2013, no pet.), the court found that a party proceeding to a bench trial without objection, waived the complaint. But, as noted, there was not even a trial setting in this action.

Long did object to the proposed order. (III SCR 475, 476-477) The last hearing before the trial court in this action was on discovery motions, and the trial court's ruling on such motions gave no warning that the court intended to deny Long a trial, much less a trial by jury. Then, out of the blue, Long's counsel received the signed court's Order (*i.e.* the final judgment), in an envelope from Appellees' counsel, in the mail fifteen days after it was signed, with no notice from the clerk of the court as to the court's action, contrary to TEX.R.CIV.P. 306a(3). Again, making a request for findings of fact and conclusions of law would not require the court to address the court's denying Long a trial by jury. Such error is properly preserved by Long including the point as an issue presented in the Brief of Long.

WHEREFORE, PREMISES CONSIDERED, Long pray that this Court reverse and render the Order (App 1) in its entirety as being void (either entered without jurisdiction or without prudential authority), reverse and render all orders found within the Order, or in the alternative, reverse and remand all orders within the Order, reverse and render the Court's denial of Long's and Woodbine's plea in abatement (App. 2), or in the alternative, reverse and remand the denial of the plea in abatement, and for such other and further relief, both general and special, at law or in equity, to which Long may show themselves justly entitled.

Respectfully submitted,

**LAW OFFICES OF**
**F. FRANKLIN HONEA**

5949 Sherry Lane, Suite 1700
Dallas, Texas 75225
(214) 361-9494 X110
(214) 691-2109 (fax)
frank@honealaw.com

BY:   /s/
        F. Franklin Honea
        State Bar No. 09934300

Ron Adkison
State Bar No. 00921090
**ADKISON LAW FIRM**
300 W. Main St.
Henderson, TX 75652-3109
Telephone:  (903) 657-8545
Facsimile:  (903) 657-6108
ron@adkisonlawfirm.com

**ATTORNEYS FOR LONG**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been delivered by electronic transmission, a manner in accordance with the Texas Rules of Civil Procedure, addressed to the following:

Deborah Race
Ireland, Carroll & Kelley, P.C.
6101 S. Broadway, Suite 500
Tyler, Texas 75703
drace@icklaw.com

Charles H. Clark
Clark & Porter
P.O. Box 98
Tyler, Texas 75710
chc@charlesclarklaw.com

Clay Wilder
WILDER & WILDER, P.C.
200 North Main St.
P.O. Box 1108
Henderson, TX 75653-1108
903-657-0561
903-657-5088 (fax)
cwilder@suddenlinkmail.com

DATED this 28 day of January 2015.


/s/ F. Franklin Honea

## CERTIFICATE OF COMPLIANCE

I certify that this Reply Brief of Appellants, Larry T. Long and Woodbine Production Corporation includes 5921 words beginning with its Introduction through its Prayer, relying on the word count of the computer program used to prepare the document.


/s/ F. Franklin Honea